# IN RE: ERNEST J.

[No. 1204, September Term, 1981.]

*Decided July 8, 1982.*

The cause was submitted on briefs to GILBERT, C. J., and THOMPSON and MOORE, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Martha Weisheit, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Diane G. Goldsmith, Assistant Attorney General, John L. Norton, III, State's Attorney for Dorchester County,* and *Fletcher*

*Thompson, Assistant State's Attorney for Dorchester County,* for appellee.

THOMPSON, J., delivered the opinion of the Court.

Ernest J., the appellant, was charged with being a delinquent child by virtue of the breaking and entering of the home of Charles Woodward in Cambridge, Maryland. At an adjudicatory hearing held on August 26, 1981, Judge Charles E. Edmondson presiding, the appellant was found to have committed the delinquent act. Thereafter, following a disposition hearing, he was placed under the supervision of the Juvenile Services Administration.

The appellant raises the following issues:

1. Whether the identification of appellant was suggestive and illegal.
2. Whether the juvenile court erred in admitting evidence of appellant's prior contacts with juvenile services.

## FACTS

Charles Woodward testified that on the morning of June 1, 1981, he was shaving in an upstairs bathroom in his home when he heard the front door open. Looking down from the top of the staircase, he observed the appellant standing near the bottom of the stairs. When Woodward asked the boy what he wanted, he responded that he was looking for a Mrs. Stokes. Woodward advised him that he knew of no such person. Appellant thereafter departed, and Woodward immediately contacted the police.

Officer Douglas McConnell, notified of Woodward's complaint and description of the boy, observed the appellant standing on a corner approximately 10 blocks from Woodward's home. McConnell stopped the appellant, advised him of his rights, and transported him to police headquarters. McConnell further stated that appellant refused to admit anything other than he had been on the front porch of the house. Shortly thereafter, Woodward was

called to the police station where he identified the appellant, who at the time was talking to a detective, as the boy he had seen in his house.

The appellant, testifying on his own behalf, denied being in the vicinity of Woodward's residence and denied making any statement to McConnell about being on Woodward's front porch.

At the conclusion of the adjudication hearing, the court said:

"[T]he State has proven beyond a reasonable doubt that the ... [appellant] unlawfully broke and entered Mr. Woodward's house, that an act was committed which would be a crime if committed by a person who is not a child, that the ... [appellant] was the criminal agent and the court has further heard testimony that he is in need of supervision, treatment or rehabilitation, and finds him delinquent."

## I. Identification

The appellant contends that the court erred in permitting Woodward to make an identification of him at the adjudication hearing as the intruder in the house. Specifically, he maintains that Woodward's initial identification during a showup at the police station was so inherently suggestive as to render any subsequent identification prejudicial.

The short answer to the appellant's contention is that he failed to file a motion to suppress Woodward's identification and did not object at the hearing to Woodward's testimony. Even if the appellant had properly preserved his objection to the identification, we would see no error in view of the circumstances surrounding the identification, summarized by the trial court as follows:

"Mr. Woodward observed the young man and engaged in some dialogue with him for a period of about five minutes; that the lighting condition was good; that he observed the kind of clothes he was

wearing, and shortly after that, within the hour, the young man was apprehended by the police and at time was wearing the same clothing as described by Mr. Woodward."

In *Foster and Forester v. State,* 272 Md. 273, 302, 323 A.2d 419, *cert. denied,* 419 U.S. 1036 (1974), the Court of Appeals disposed of a similar contention stating:

"Although some suggestiveness is inherent in such a factual situation — the appellants, standing outside the stopped vehicle in the presence of at least four policemen — it is not one of undue suggestiveness, 'in view of the countervailing considerations that prompt, on-the-scene identifications are likely to promote fairness, by enhancing the reliability of the identifications, and permit expeditious release of innocent subjects.'" (citation omitted).

## II. Improperly Admitted Testimony

Michael Baker, a juvenile services officer, testified during the adjudication hearing as follows:

"Q. And do you have the case of Ernest J ...?
A. Yes, sir, I do.
Q. How old is Ernest J ...?
A. Ernest currently is fifteen years of age, with date of birth of 10-6-65.
Q. Is he a child in need of the Court's assistance, guidance, treatment or rehabilitation?
A. Yes, sir. Ernest has had a lengthy contact with our agency, plus his involvement in the current charge definitely indicates he is in need of everything."

The appellant objected to Baker's last remark and on appeal contends that while such testimony may have been relevant for purposes of disposition, it was of no relevance to the adjudication hearing. We agree.

The process by which a child is determined to be "delinquent" consists of a two-step procedure. First, there is an adjudicatory hearing, defined in Md. Cts. and Jud. Proc. Code Ann., § 3-801 (b) as "a hearing to determine whether the allegations in the petition, other than allegations that the child requires the court's assistance, treatment, guidance or rehabilitation are true." Thereafter, a disposition hearing is held to determine: "(1) [w]hether a child needs or requires the court's assistance, guidance, treatment or rehabilitation; and if so (2) [t]he nature of the assistance, guidance, treatment or rehabilitation." § 3-801 (m). Despite the separate and distinct functions of each hearing, an overlap has surfaced which has resulted in erosion of the definitive roles of these proceedings. This overlap emanates from the conflicting signals in the statute as to the appropriate hearing in which the issue of the need for the juvenile's supervision can be, or must be, presented. The primary purpose of the adjudicatory hearing is to determine the merits of the allegation in the petition. § 3-819; Md. Rule 914. Relying on § 3-819 (b) trial courts have generally imposed a finding of "delinquency" at the conclusion of this hearing once they have been satisfied that the juvenile committed the act in question.[1] *See*, e.g., *In Re: David K.*, 48 Md. App. 714, 429 A.2d 313 (1981); *In Re: Dominic W.*, 48 Md. App. 236, 426 A.2d 432 (1981). However, as evidenced in the present case, confusion arises as to whether the court may conclude that the juvenile is a "delinquent child," as defined in § 3-801 (k) without further inquiry as to the child's need for supervision.

Section 3-801 (k) defines delinquent child as one "who has committed a delinquent act *and requires guidance, treatment, or rehabilitation.*" (emphasis added). The definition indicates that before a juvenile can be classified as a "delinquent child" there must be a finding of *both* the existence of the delinquent act and the child's need for super-

---

1. Section 3-819 (b) provides:

"Before a child is adjudicated delinquent, the allegations in the petition that the child has committed a delinquent act must be proved beyond a reasonable doubt."

vision. There is no statutory mandate, however, that these elements be satisfied at the adjudicatory level. Neither the language set forth in § 3-819 or § 3-801 reveals any duty of the adjudicatory judge other than a determination as to whether or not the juvenile committed a "delinquent act." [2] That the legislature intended to exclude all inquiry into the child's need for supervision at the adjudicatory level is revealed in the following 1976 revised definition set forth in § 3-801 (b):

> "*Adjudicatory hearing.* — 'Adjudicatory hearing' means a hearing to determine whether the allegations in the petition, *other than* allegations that the child requires the court's assistance, treatment, guidance or rehabilitation are true." (emphasis added).

This manifests legislative intent to maintain the distinct functions of the adjudicatory hearing and the dispositional hearing by eliminating all inquiry into the child's need for guidance or treatment from the former, thereby preventing irrelevant and potentially prejudicial facts from being taken into consideration in the adjudication of pending charges.

Although the signals are conflicting, we conclude that it is only after the adjudicatory judge finds that the juvenile has committed a delinquent act and the dispositional judge finds that the child is in need of treatment or guidance, can a juvenile be classified as a "delinquent child" as defined in § 3-801 (k).[3] While it was improper to permit at the

---

**2.** Section 3-801 (j) defines delinquent act as:

"... an act which would be a crime if committed by an adult."

**3.** This problem has been acknowledged in dicta in In Re: Appeal No. 544, 25 Md. App. 26, 35 n. 9, 332 A.2d 680, (cert. granted, later dismissed as improvidently granted) (1975), where, upon reviewing the relevant definitions in § 3-801, the Court stated:

"Thus, there appears to be an overlapping. To be delinquent, a child must be in need of supervision, treatment, or rehabilitation. This, therefore, has already been determined at the adjudicatory hearing before the disposition hearing is held."

While this footnote indicates that the issue of the child's need for court supervision should be raised at the adjudicatory hearing as well as the

adjudicatory hearing the testimony of the juvenile services officer as to the child's need for supervision, we conclude that the error was harmless beyond any reasonable doubt. *See, Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976). We reach this determination because by its remarks, the trial court showed that it did not base its decision on any testimony received from the juvenile services officer.

*Judgment affirmed.*
*Appellant to pay the costs.*

---

dispositional hearing, it should be noted that this conclusion was premised on the pre-1976 version of § 3-801 (b) which provided: " 'Adjudicatory hearing' means a hearing to determine the truth of the allegations in the petition", thus, not taking into consideration the legislative intent to eliminate such evidence as revealed in the amended 1976 version which added the limiting words " . . . other than, allegations that the child requires the court's assistance, treatment, guidance or rehabilitation. . . ."