472 A.2d 95

**In re HERBERT B.**

**No. 624, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

March 7, 1984.

Certiorari Granted June 27, 1984.

James G. Klair, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., of Maryland, Arthur A. Marshall, Jr., State's Atty., for Prince George's County and Melanie Fishkind, Asst. State's Atty., for Prince George's County on brief, for appellee.

Gary S. Offutt, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender of Maryland on brief, for appellant.

Submitted before LISS, WILNER and BISHOP, JJ.

LISS, Judge.

At an adjudicatory hearing conducted on March 21, 1983, the Circuit Court for Prince George's County (Woods, J.) sitting as a juvenile court, found Herbert B., the 16 year old appellant, to have committed a delinquent act by having participated in a breaking and entering. At a disposition hearing held on April 20, 1983, the court, notwithstanding the appellant's commission of a delinquent act, determined that the appellant was not in need of treatment or guidance, and therefore was not a delinquent child. The court did, however, direct that the appellant and his mother, Emma M., pay $228.50 restitution. On appeal the appellant contends that the trial court erred in ordering the restitution because:

1. it had "dismissed the case"; and
2. it had not made an investigation of the appellant's ability to pay restitution.

The evidence at the adjudicatory hearing indicated that a laundromat had been broken into about 11:00 P.M. on Sunday, November 28, 1982. Officer Adolpho Walter apprehended the appellant in the vicinity of the laundromat with candy taken from the laundromat. Although the appellant told Walter at the time that the candy had been given to him by a third party, the appellant elected not to testify at the hearing and did not present any witnesses on his own behalf. At the conclusion of the hearing, the court told the appellant that it found him involved in "count two, which is storehouse breaking, $5 or upward" and "involved in count seven, destruction of private property." The court then said:

"I am going to send him back home with his mother, order a complete juvenile service investigation, return him on April 20th. I will send him over to Master Sparrough for a restitution hearing."

The record contains a "Master's report and Recommendation" which indicates that a hearing was held on April 20, 1983, and restitution assessed at $228.50. No other information concerning the master's hearing is included in the record except that on the face of the report is a notation that the appellant wanted to appeal the restitution.

At the commencement of the disposition hearing on April 20, 1983, the following colloquy occurred:

"[THE COURT]: Judge Woods heard this trial. And the young man is entitled to have Judge Woods sentence him. Of course, I am more than happy to do that. If he wishes me to do it. Judge Woods is not available today. If he wants to have it a different day, of course, he can or he can have me do it, whichever you prefer, son.

MRS. BAGARIA [Appellant's counsel]: It is all right with him, Your Honor."

The court then said, after a short discussion with the parties:

"Okay. Well, very frankly, after reviewing the [Juvenile Services] report, it seems to me that he really doesn't need any particular care and treatment. The court is going to find as a fact that he does not need care and treatment. Therefore, the matter will stand dismissed.

And now there is a minor problem here in that restitution was ordered in the amount of $228.50, which I note from this face of the order he wants to appeal. If I dismiss the case I am not even sure that the court has jurisdiction to order restitution."

After more discussion with the parties, the following colloquy then occurred:

"[THE COURT]: I think the court will reiterate what I said before, I will find as a fact he is not in need of care and treatment, and the matter will be dismissed. However, at the same time, there is a restitution order here in the amount of $228.50 recommended by the Master.

Was there any question about the dollar amount?

MRS. BAGARIA: No, Your Honor, that was an agreement of the parties."

### I.  Jurisdiction to order restitution

The thrust of the appellant's contention is that by "dismissing" the case, the court lost jurisdiction to order restitution. Moreover, as heretofore noted, the court itself, after finding appellant was not a "delinquent child", indicated some doubt as to whether it still had the jurisdiction to order restitution. We consider the appellant's arguments and the court's doubts to be groundless.

■ The statutory scheme for juvenile justice involves two levels of inquiry. The threshold level is a factual determination at an adjudicatory hearing to determine whether or not a delinquent act was committed by the child. In *In Re Ernest J.*, 52 Md.App. 56, 61, 447 A.2d 97 (1982), we stated:

"Neither the language set forth in § 3–819 or § 3–801 [of Maryland Code (1974, 1980 Repl. Vol.) Courts & Judicial Proceedings Article] reveals any duty of the adjudicatory judge other than a determination as to whether or not the juvenile committed a 'delinquent act.'" [Footnote omitted].

In a footnote we observed that Section 3–801(j) of the Courts & Judicial Proceedings Article defines "delinquent act" as ". . . an act which would be a crime if committed by an adult."

Once the threshold determination has been made, as it was in the instant case, that a "delinquent act" has been committed, two additional determinations may be required to be made. The first is as set forth in *In Re Ernest J., supra,* at 60, 447 A.2d 97:

". . . [A] disposition hearing is held to determine: '(1) [w]hether a child needs or requires the court's assistance, guidance, treatment or rehabilitation; and if so (2) [t]he nature of the assistance, guidance, treatment or rehabilitation.' § 3–801(m)."

In the instant case, as heretofore noted, the court stated: ". . . [I]t seems to me that he really doesn't need any particular care and treatment. The court is going to find as a fact that he does not need care and treatment."

The second additional determination that may need to be made is set forth in Section 3–829(a) of the Courts Article, which provides in pertinent part:

"The court may enter a judgment of restitution against the parent of a child, or the child in any case in which the court finds a child has committed a delinquent act . . ."

It is significant that Section 3–829(a) does *not* require, as a predicate for ordering restitution, that the child be adjudicated a delinquent, *i.e.,* that the court make the second finding that the child is in need of court assistance, guidance, treatment or rehabilitation. The only prerequisite in this regard is a finding that he committed a delinquent act and that the property of another was stolen, damaged or

destroyed. Those findings were made at the adjudicatory hearing, and the record reflects that there was sufficient evidence to support them. Therefore the court did not err in ordering the appellant to make restitution to the proprietor of the laundromat for the damage that had been done.

## II.   Ability to pay restitution

■ Secondly the appellant contends that the court erred in directing him to pay restitution without making a determination of his ability to do so. We find the contention to be flawed. First of all the appellant's counsel advised the court that the amount of restitution was by "agreement" of the parties. Secondly we have no record of what was said at the master's hearing concerning the matter of restitution nor is there a proffer as to why restitution cannot be paid. Thus we would be unable to determine the correctness of the restitution proceedings. Finally at the disposition hearing, which occurred after the restitution hearing before the master, the appellant did not raise the issue of ability to pay. Thus the restitution issue is waived. Maryland Rule 1085.

*JUDGMENT AFFIRMED.*

*COSTS TO BE PAID BY APPELLANT.*