# IN RE: JOHN H.

[No. 1700, September Term, 1980.]

*Decided September 4, 1981.*

The cause was argued before MORTON, MOORE and COUCH, JJ.

*Peter S. Smith* for appellants.

*Patricia E. McDonald, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Howard B. Merker, Deputy State's Attorney for Baltimore County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

After an adjudicatory hearing on January 29, 1980, in the Circuit Court for Baltimore County, sitting as a Juvenile Court, John H. was adjudged to be a delinquent because of acts of vandalism previously committed by him and another juvenile which resulted in damages to several Baltimore County public schools in the approximate amount of $450,000. Thereafter, John H. was "committed to Montrose School for further placement by Juvenile Services."

On March 6, 1980, the state's attorney for Baltimore County filed several petitions against the mother and father (Mr. and Mrs. H.) of John H., praying that they be required to make restitution to the Board of Education of Baltimore County pursuant to Md. Cts. and Jud. Proc. Code Ann. § 3-829. After hearings in the Circuit Court for Baltimore County, a judgment was awarded against Mr. and Mrs. H. "up to the maximum amounts allowed under the statute in favor of the Baltimore County Board of Education." Under date of November 3, 1980, the court entered a judgment of

restitution against Mr. and Mrs. H. in the amount of $10,100.[1]

## I.

It is first contended by Mr. and Mrs. H. that "Section 3-829, which authorized imposition of the restitution judgment against appellants, is unconstitutional to the extent that it imposes liability on them without regard to their fault."

The appellants recognize that "[i]n *Matter of Sorrell,* 20 Md. App. 179 (1974), this Court upheld the constitutionality of the strict liability features of § 3-829. Because they believe that *Sorrell* was wrongly decided and that its holding permitted an unjust result in their case, appellants respectfully urge this Court to reconsider its position and rule that, to the extent that the statute imposes liability without regard to either their complicity in the illegal conduct of their son or the nature of their parental supervision, it unconstitutionally deprives them of property without due process." (Footnotes omitted.) The appellants also "acknowledge that no direct challenge to the statute's constitutionality was made before the trial court in this case."

Counsel for appellants then proceeds to devote a substantial segment of his brief to a scholarly and pervasive attack upon the constitutionality of § 3-829, which the Court has carefully scrutinized and considered on its merits. We are, nevertheless, convinced that our holding in *Sorrell* was based upon a foundation of sound reasons consonant with

---

1. Section 3-829 (b) (4) provides "As an absolute limit against any one child or his parents, a judgment rendered under this section may not exceed $5,000 for all acts arising out of a single incident." In this case there were three separate incidents: (1) damages inflicted between October 13, 1979, and October 14, 1979, at Lutherville Elementary School; (2) damages inflicted between November 10, 1979, and November 11, 1979, at Lutherville Elementary School; and (3) damages inflicted on November 11, 1979, at Ridgely Junior High School.

well settled principles governing the constitutional analysis of statutes. In *Sorrell* we said, at 189:

"The legislative determination here demonstrates a legitimate State interest in a matter affecting the general welfare. The remedy selected for the protection and promotion of that determination has not been shown to be arbitrary, oppressive or unreasonable. [The statute] does not offend against the Maryland and Federal Constitutions." (Footnote omitted.)

We are fortified in our conclusion by the knowledge that no decision of this Court, the Court of Appeals of Maryland, or the Supreme Court of the United States has either overruled the holding in *Sorrell* or questioned its soundness. Accordingly, we decline to overrule or modify *Sorrell's* conclusion that the statute is constitutional.

## II.

We cannot subscribe to the appellants' second contention that "[t]he decision of the Court below was arbitrary since it was based on a clearly erroneous view of key facts."

The thrust of the argument is that since the estimated damage to the schools approximated $450,000, "imposing a $10,100 judgment against appellants is rational (albeit harsh) only if the purpose is to punish them." This contention overlooks the fact that the amount of the judgment imposed was limited by the terms of the statute. Moreover, there is nothing in the statute to indicate it was the exclusive purpose of the legislature to punish the parents of a delinquent by requiring them to contribute toward restitution of a victim. Had punishment of the parents been the purpose, it would have been a simple matter to authorize the court to levy a fine rather than provide for reimbursement of the victim. We cannot disagree with the juvenile court judge that one of the purposes of the statute was compensatory rather than exclusively penal in nature.

## III.

Appellants next urge that "[t]he judgment of the Court below should be reversed since the State did not establish at the restitution hearing the necessary statutory prerequisite of wilfulness or maliciousness."

It is true that the issue of wilfulness and maliciousness, which the statute makes a condition precedent to the award of restitution, was not directly addressed by either the State or Mr. and Mrs. H. at the restitution hearing. There was introduced into evidence, however, the "Statement of Facts" which formed the basis of the delinquency hearing. The statement reads, in part:

> "It is agreed by and between the State of Maryland, the Respondent, [John H.] and the Respondent's Attorney, that the following facts are true:
>
> Once inside the school,[2] the Respondents herein set out on a course of wilful and malicious destruction to wit: piles of desks stacked in the hallway were knocked over and damaged, five hallway light fixtures were destroyed, fire extinguishers were taken off the wall and their contents sprayed over the wall and floor, classroom door windows were broken, students' pictures on a hallway bulletin board were torn and thrown on the floor."

Concerning the vandalism that occurred at the Ridgely Junior High School on November 11, 1979, the statement reads, in part:

> "Once inside the school, the Respondents herein set out on a course of wilful and malicious destruction, to wit: damaging and destroying furniture in offices, lounges and classrooms, plugging up sinks and flooding various areas of the school."

The statement was signed by John H., his attorney, and by Mr. and Mrs. H. Thus, it is apparent that by affixing their

---

2. Lutherville Elementary School.

signatures to the "Statement of Facts" Mr. and Mrs. H. conceded that the actions of John H. were "wilfully and maliciously" executed. Indeed, the manner in which the physical devastation was committed by John H. makes self-evident that his acts were performed wilfully and maliciously. The trial judge had before him this evidence at the time he handed down his decision. Accordingly, we cannot subscribe to appellants' contention that the necessary statutory prerequisite of wilfullness or maliciousness was not established at the restitution hearing.

## IV.

It is next contended that "[t]he restitution judgment should be reversed because appellants were never represented by their own counsel and never waived such representation."

The facts in the record before us simply do not support this contention. It is true that Mr. and Mrs. H.'s counsel did not file in the restitution proceeding a formal entry of his appearance as their attorney. He did, however, as the record demonstrates, appear as their counsel at the restitution hearing and was accorded every right to which counsel is entitled in the participation of a trial.

It is argued that because Mr. and Mrs. H.'s attorney had represented John H. in the delinquency proceedings and gave no indication that he ceased representing him at the time of the restitution hearing, there was created a possible conflict of interest situation. In the first place, the State's petition for restitution was addressed solely against Mr. and Mrs. H. It did not seek restitution from John H. While there may have been some remote potential for conflict of interest had the trial judge, *sua sponte*, entered a judgment against John H., the fact of the matter is that this did not occur. We see no merit in appellants' fourth contention.

## V.

In their fifth contention, appellants assert that "[t]he restitution hearing was not timely held and, consequently, the restitution judgment should be set aside."

This issue was not raised below, it was not passed upon by the trial judge, and it cannot be raised for the first time in this appeal, the issue not being jurisdictional in nature. Maryland Rule 1085.

## VI.

Appellants further contend that "[t]he Court below erred in ruling that Courts & Judicial Proceedings Article, § 3-829 authorizes restitution in favor of an agency of government."

In support of this contention the appellants address the legislative history of the statute. They point out that prior to 1972 the restitution provision then in effect, Md. Ann. Code art. 26, § 71A, provided for "judgment in favor of a wronged person . . ." Appellants further point out:

> "In 1972 the statute was amended to add the words 'partnership, corporation or other business entity, or the federal, state, or local government or any agency thereof' immediately after the word 'person.' Laws of Md., 1972, ch. 267. The effect was to make an entity such as the Baltimore County Board of Education eligible for a restitution judgment."

Appellants continue:

> "In 1974 the restitution statute was transferred to Cts. & Jud. Proc. Art., § 3-839 as part of the general recodification effort of the Maryland Code. *See* Laws of Md., 1973, 1st Sp. Sess., ch. 2, § 1. While no substantive change was made in the restitution provision, the revision did remove from the restitution section itself the language pertaining to

business entity or government that was added in 1972 and transferred it to the definitions section. *See* § 3-801 (x) (1974). The effect of this change was simply to continue the practice initiated in 1972 of allowing restitution judgments in favor of a governmental or business entity.

In 1975 a new Juvenile Causes law was enacted. Laws of Md., 1975, ch. 554. Unlike the 1974 recodification, the 1975 statute, in its effort to reconcile differences between the Montgomery County and state-wide laws, *see Matter of Trader,* 272 Md. 364 (1974), and to make improvements in the juvenile code, constituted a major substantive change. Included were several changes in the restitution section which, in the 1975 statute, became § 3-829. One of those changes was the complete deletion of the 'property' definition in § 3-801(x) which had continued in effect the 1972 expansion of restitution rights to include business and governmental victims. The result of this change was a reversion to the statutory language as it existed prior to the 1972 — namely no inclusion of business entity or government as a candidate for restitution. [Footnote omitted.]

Plainly, the legislature knows precisely how to indicate its desire to include government within the terms of the restitution statute if it desires. It so desired in 1972. Unless one is to assume that the legislature exercises that desire whether it says so or not — which would seem to render its 1972 action superfluous — this Court should conclude that in its major revision in 1975, the legislature decided to proceed on this issue as it had prior to 1972."

While the legislative history of § 3-829 appears to be accurately protrayed by the appellants, they do not include a discussion of the 1980 amendment to this section which went into effect on July 1, 1980. (*See* ch. 409, 1980 Md. Laws.) Section 3-829 of Md. Cts. & Jud. Proc. Code Ann. now reads in part:

"(a) The court may enter a judgment of restitution against the parent of a child, or the child in any case in which the court finds a child has committed a delinquent act and during the commission of that delinquent act has:

(1) Stolen, damaged, or destroyed the property of another; or

(2) Inflicted personal injury on another, requiring the injured person to incur medical, dental, or hospital expenses.

(b) Considering the age and circumstances of a child, the court may order the child to make restitution to the wronged party personally.

(c) (1) A judgment rendered under this section may not exceed:

(i) As to property stolen or destroyed, the lesser cf the fair market value of the property or $5,000;

(ii) As to property damaged, the lesser of the amount of damages not to exceed the fair market value of the property damaged or $5,000 . . . ."

It is at once apparent that the 1980 statute constituted a substantial revision of the previous law. In our view it is significant that the legislature deleted the provision authorizing the court to enter a judgment of restitution "to the wronged person." In simply stating that a judgment may be entered against the parents for the acts of their delinquent child, it seems clear that the Maryland General Assembly intended to eliminate any question concerning who was entitled to judgment and to make it clear that the entry of such judgment would not be confined to a human person. Support for this view is found in section (b) of the statute which authorizes the court to order the delinquent child to make restitution "to the wronged party personally." It is difficult to believe that the legislature intended to prohibit judgments of restitution from being entered in favor of

the substantial segment of society which is made up of corporations, partnerships, business entities and governmental agencies. We see no statutory impediment to the imposition of the judgment of restitution against the appellants in favor of the Board of Education of Baltimore County.

Lest there be any concern that we are governed in our review of this case by the 1980 version of § 3-829, we observe that it went into effect on July 1, 1980. The judgment against the appellants was entered on November 13, 1980, and, accordingly, had to be imposed in accordance with the provisions of the then existing law. *See Stephens v. Dixon,* 30 Md. App. 56, 66 (1976).

## VII.

Finally, the appellants contend that "[t]he Court below erred in granting restitution in the amount of $10,000 [*sic*] for damage which occurred on the evening and early morning of November 10-11, 1979, since those acts all arose out of a single incident."

Aside from the fact that this issue was not raised below, its premise is not supported by the record. The trial judge found that John H. had "destroyed the property of the Board of Education of Baltimore County on three separate occasions, in excess of $5,000.00 on two of the occasions and in the amount of $200.00 on the third occasion. . . ." His finding is supported by the "Statement of Facts," signed by all parties, which states that the Lutherville Elementary School was unlawfully entered by John H. between the hours of 6 p.m. on Saturday, October 13, 1979, and 9 a.m. on Sunday, October 14, 1979; that the Ridgely Junior High School was unlawfully entered on November 11, 1979, between 2 a.m. and 3 a.m.; and that the Lutherville Elementary School was unlawfully entered between November 10, 1979, at approximately 8 or 9 p.m. and November 11, 1979, at approximately 4:20 a.m. These breakings and enterings obviously did not arise out of a single incident.

*Judgment affirmed;*
*Costs to be paid by appellants.*