470 A.2d 1318

**In re DAN D.**

**No. 534, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Feb. 8, 1984.

524

Gary G. Everngam, Silver Spring, for appellant.

Bernard A. Penner, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Andrew L. Sonner, State's Atty., for Montgomery County, and Dwight Price, Asst. State's Atty., for Montgomery County, on the brief, for appellee.

Argued before WILNER, GARRITY and BLOOM, JJ.

WILNER, Judge.

Md.Code Ann.Cts. & Jud.Proc. art., § 3–829 permits a juvenile court to enter a judgment of restitution against the parent of a child

"in any case in which the court finds a child has committed a delinquent act and during the commission of that delinquent act has:

(1) Stolen, damaged, or destroyed the property of another; [or]

(2) Inflicted personal injury on another, requiring the injured person to incur medical, dental, hospital, or funeral expenses."

In *Matter of Sorrell*, 20 Md.App. 179, 315 A.2d 110, *cert. den.* 271 Md. 740 (1974), this Court found the predecessor statute to § 3–829 to be constitutional. We concluded that the imposition of liability upon the parents of juvenile offenders who, by their malicious conduct, cause injury to innocent third parties was a matter of legitimate State interest and was not arbitrary, oppressive, or unreasonable.

Twice since *Sorrell* the Court of Appeals has had the occasion—and indeed sought the occasion—to review that very question, but in both instances it disposed of the case on other grounds. *In Re John H.*, 293 Md. 295, 443 A.2d 594

(1982); *In Re James D.,* 295 Md. 314, 455 A.2d 966 (1983). The question, in a more limited form, is back again; but, upon the state of the record before us, we too shall be spared the need to reconsider it.

## Background

The appellant we shall call Dan, Sr. He and Nancy are the parents of Dan, Jr. They were divorced in December, 1972, by a Texas court, the decree awarding custody of Dan, Jr. (and his sister) to Nancy, subject to reasonable visitation rights in Dan, Sr. At all relevant times, for purposes of this case, all of the parties lived in Maryland; Dan, Jr. and his sister resided with Nancy in Kensington and Dan, Sr. lived in Glenwood, some twenty to twenty-five miles away.

On December 17, 1982, three petitions were filed against Dan, Jr. in the District Court of Montgomery County, sitting as a juvenile court, each charging him with breaking into a home and stealing property therefrom.

An adjudicatory hearing was held in these matters on January 7, 1983. The transcript of that proceeding is not in the record before us, so we do not know what evidence was adduced with respect to the charges. At the conclusion of the hearing, the court, by written order, found that Dan, Jr. had committed a delinquent act (daytime housebreaking) in each of the three cases. The child was continued in the custody of the Secretary of Health and Mental Hygiene at the Noyes Children's Center "pending a Disposition and Restitution hearing" scheduled for February 4, 1983.

Between January 25 and January 31, 1983, the State filed, in each of the three cases, petitions for restitution against Dan, Jr., Nancy, and Dan, Sr.[1] Based on supporting affida-

---

1. As initially filed, the petitions did not clearly name Dan, Sr. as a respondent. They were amended in court on February 4, 1983, to clarify that restitution was indeed being sought from Dan, Sr. No question has been raised about the adequacy of the notice to Dan, Sr. He was apparently aware of the State's intention and was represented by counsel throughout the restitution phase of the proceeding.

vits from the victims, restitution was sought for $300 on behalf of Eleanor Silverman, $6,939 on behalf of Billie Lopez, and $4,932 on behalf of Filbert Woodside. Dan, Sr. responded with motions to dismiss the petitions, as to him, based largely on constitutional and statutory construction grounds, and with prayers for jury trial, all of which were denied. Evidentiary hearings were held on March 3 and 18, 1983, part of which were devoted to considering the relationship between Dan, Sr. and Dan, Jr. Following the March 18 hearing, the court continued the child's commitment to the Secretary of Health and Mental Hygiene, and entered judgments of restitution jointly and severally against the child and both parents in favor of Ms. Silverman ($300), Ms. Lopez ($5,000), and Dr. Woodside ($4,932). This appeal by Dan, Sr. is from those judgments. He argues:

"I.  The term 'parent' as used in Cts. and Jud.Proc. art. § 3–829 does not include a noncustodial parent who has become such by reason of a valid court decree and who does not have actual custody and control.

II.  Section 3–829, which authorizes imposition of restitution judgment against Appellant, is unconstitutional.

III.  The trial court erred in denying Appellant's demand for jury trial.

IV.  The trial court erred in entering judgment against the Appellant without evidence in the restitution proceeding that the Appellant's child stole, damaged or destroyed the property of the petitioners."

We agree with appellant's fourth contention. That obviates the need to address the more fundamental legal questions raised in his first three complaints.

*Evidentiary Sufficiency*

Appellant is quite correct in his statement that no evidence was adduced in the restitution proceeding to show that Dan, Jr. stole, damaged, or destroyed the property of any of the three victims. If that fact was established, it was

established at the adjudicatory hearing. The only evidence in this regard admitted at the disposition/restitution hearing concerned the value of the items taken from the three homes, not who took those items.

Courts art. § 3–829(a), as we have already noted, permits a judgment of restitution "in any *case* in which the court" makes the requisite findings—in this instance, that the child has committed a delinquent act and in the course thereof has stolen, damaged, or destroyed the property of another. The word "case," as used in § 3–829(a), is not defined, and we therefore have to look at the underlying statutory scheme to determine what it means.

■ Ordinarily, a juvenile "case" consists of two separate and distinct proceedings—an adjudicatory proceeding to determine whether the child committed the delinquent act(s) alleged in the petition and, if the court so finds, a subsequent disposition proceeding to determine what, if any, type of court supervision the child requires. *See* § 3–801(b) and (n); *In Re Ernest J.,* 52 Md.App. 56, 447 A.2d 97 (1982). Where restitution is sought against the child's parents, a third proceeding is required to determine whether the parents are indeed liable. This proceeding, though distinct in function and purpose from the adjudicatory and disposition proceedings, which are directed primarily at the child, may be held "as part of" or "contemporaneously with" either the adjudicatory or disposition hearing. § 3–829(e); Md.Rule 918 a.

■ Whether a restitution hearing is conducted as part of an adjudicatory or disposition proceeding or separately, as is also permitted, one thing is clear: there must appear in the record at the restitution hearing not only the judicial findings that are a prerequisite to liability, but sufficient evidence to support those findings. If the restitution hearing is conducted as part of or contemporaneously with the adjudicatory hearing, there is, of course, no need to have the same evidence introduced twice. So long as the parent being proceeded against has a full and fair opportunity to partici-

pate—to cross-examine witnesses, to challenge evidence, to present evidence on his own behalf—the evidence taken at that proceeding may and should be regarded as applicable not only with respect to the child's adjudication, but also with respect to the issue of restitution. If it suffices to establish the statutory criteria for liability, no more is required.

■ The problem arises when the restitution hearing is conducted later, either as part of a disposition proceeding or separately. The underlying facts pertaining to the delinquent act, having already been established, are not normally relitigated in a disposition hearing. But as we made clear in *Matter of Sorrell, supra,* 20 Md.App. 179, 315 A.2d 110, and again in *In Re Appeal No. 769, Term 1974,* 25 Md.App. 565, 335 A.2d 204, *cert. den.* 275 Md. 751 (1975), parental liability may not flow inevitably from a prior determination that the child is delinquent. As we said in *Sorrell* with respect to the predecessor statute to § 3–829 (art. 26, § 71A), a juvenile court judge may enter a restitution judgment only after a restitution hearing "wherein evidence is produced that is legally sufficient" to establish the statutory criteria. 20 Md.App. at 191, 315 A.2d 110.

■ This does not mean that the adjudicatory phase must be retried in every case. At least since 1973, a child's parents are made parties to the juvenile proceeding (§ 3–801(q); *compare* former art. 26, § 70–1(e), 1973 Repl. Vol.), and, in a delinquency case, they are required to be summoned in response to a juvenile petition. Md.Rule 904 c. In the ordinary case, subject to the right of all parties to produce additional relevant evidence, we see no reason why the record made at the adjudicatory (or a disposition) hearing, or an agreed synopsis of it, cannot be placed into evidence or otherwise made a part of the record in the restitution proceeding. *See In Re John H.,* 49 Md.App. 595, 599–600, 433 A.2d 1239 (1981), *aff'd* 293 Md. 295, 443 A.2d 594 (1982). If that record, together with such additional evidence as may be admitted at the restitution hearing,

suffices to establish the necessary conditions to liability, the requirements of both the statute and procedural due process, as it relates to this issue, will be satisfied.[2]

In the case before us, this procedure was not used. As we have observed, no evidence whatever pertaining to the delinquent acts was offered in the restitution proceeding. The record made at the adjudicatory hearing was not made part of the restitution proceeding, *and it is not included in the record now before us.* It seems evident that everyone, including appellant, who appeared, participated, and was represented by competent counsel at the restitution hearing, took the underlying facts relating to the child's conduct and culpability as having been satisfactorily established; and the only evidence produced and the only evidentiary challenges made at the restitution hearing pertained to valuation. Although appellant objected to testimony by the victims as to the value of the property taken from their respective homes, at no time did he complain of the lack of evidence as to his son's involvement, and at no point did he move to dismiss the petition on that account.

In a jury case, this omission would have been fatal. A party—even a criminal defendant—who fails to challenge the sufficiency of evidence by a timely and appropriate motion in the trial court waives his right to complain about it on appeal. But a different rule pertains where, as here, the judge acts as the trier of fact. Because Md.Rule 1086 requires this Court to review the case "upon both the law and the evidence" when the action is tried without a jury, we "must [in a non-jury case] entertain the issue of the sufficiency of the evidence when presented on appeal even

---

2. We do not mean to suggest that a parent in a subsequent restitution proceeding is necessarily precluded by *res judicata* or collateral estoppel from challenging the accuracy, weight, or sufficiency of the evidence produced at an earlier adjudicatory or disposition proceeding. *See In Re Appeal No. 769, Term 1974, supra,* 25 Md.App. at 584, 335 A.2d 204. Indeed, for purposes of *restitution,* he or she may do just that. We simply conclude that, subject to such challenge, the record may be made part of the restitution proceeding and that findings may be based upon it.

in the absence of a motion for judgment of acquittal below." *Barnes v. State,* 31 Md.App. 25, 29, 354 A.2d 499 (1976); *Jason v. State,* 1 Md.App. 136, 228 A.2d 485 (1967). *See Moon v. Weeks,* 25 Md.App. 322, 327, 333 A.2d 635 (1975), so construing the rule in a civil case.

Given the void in the record, we have no choice but to reverse. We cannot even tell whether the evidence produced at the adjudicatory hearing was sufficient to establish appellant's liability under § 3–829.

JUDGMENTS REVERSED; MONTGOMERY COUNTY TO PAY THE COSTS.