720 So.2d 476 (1998)
In the Interest of B.D.
R.S. and D.S.
v.
STATE of Mississippi.
No. 93-CA-01186-SCT.
Supreme Court of Mississippi.
June 25, 1998.
*477 B. Calvin Cosnahan, II, McComb, for Appellant.
Michael C. Moore, Attorney General, Jackson, William Benjamin Regan, Magnolia, for Appellee.
En Banc.
PITTMAN, Presiding Justice, for the Court:
¶ 1. This case arose in the Youth Court of Pike County, Mississippi, where BD, a juvenile, was charged with multiple counts of burglary and grand larceny. There were other juveniles charged as principals along with BD. On April 23, 1993, a petition alleging that BD was a delinquent child was filed in the Youth Court of Pike County, Mississippi, by Youth Court Prosecutor Ben Regan. The appellants, DS and RS, contend that DS was summoned to court as the mother of the child and that CD was summoned to court as the father of said child, but that RS, the child's stepfather, was not a party to the petition. It is noted that a summons was served upon BD, DS and RS. All three were present in court for the detention hearing.
¶ 2. An adjudication hearing was held on May 6, 1993. After the hearing, the youth court entered its order of adjudication, determining that BD was a delinquent child. The court immediately proceeded with the dispositional hearing, ordering that BD be placed in Columbia Training School. The court additionally ordered that "the above child and his parent or parents are to pay restitution, which is to be determined at a later date."
¶ 3. The restitution hearing was held on June 9, 1993. At the restitution hearing, counsel for DS and RS objected to the parents/custodians being held liable for the acts of BD and to the parents/custodians being required to repay certain insurance companies against whom claims had been filed by those damaged by BD's and others' acts. The youth court overruled the objections. The youth court entered its judgment of restitution on July 29, 1993, against BD, DS and RS, along with another juvenile offender and her mother, for $19,782.93, including $10,964 to St. Paul Insurance Company for claims paid. The court further ordered that "the parents of said minors pay $200.00 for each of said minors each month beginning July 15, 1993."
¶ 4. DS and RS have appealed, alleging ten points of error by the youth court. Some are not supported by authority; others were not raised in the youth court. The primary statute at issue is Miss.Code Ann. § 43-21-619 (1993), which provides:
(1) The youth court may order financially able parents to pay for court ordered medical and other examinations and treatment of a child; for reasonable attorney's fees and court costs; and for other expenses found necessary or appropriate in the best interest of the child as determined by the youth court. The youth court is authorized to enforce payments ordered under this subsection.
(2) The youth court may order the parents, guardians or custodians who exercise parental custody and control of a child who is under the jurisdiction of the youth court and who has willfully or maliciously caused personal injury or damaged or destroyed property, to pay such damages or restitution through the court to the victim in an amount not to exceed the actual loss and to enforce payment thereof. Restitution ordered by the youth court under this section shall not preclude recovery of damages by the victim from such child or parent, guardian or custodian or other person who would otherwise be liable. The youth court also may order the parents, guardians or custodians of a child who is under the jurisdiction of the youth court and who willfully or maliciously has caused personal injury or damaged or destroyed property to participate in a counseling program or other suitable family treatment *478 program for the purpose of preventing future occurrences of malicious destruction of property or personal injury.
(3) Such orders under this section shall constitute a civil judgment and may be enrolled on the judgment rolls in the office of the circuit clerk of the county where such order was entered, and further, such order may be enforced in any manner provided by law for civil judgments.
This provision for restitution by parents, guardians or custodians under paragraph numbered (2) above has never been construed by this Court. In this case we must reverse and remand the judgment against the juvenile and the appellants.

I.
¶ 5. RS and DS allege that § 43-21-619 is unconstitutional because it allows restitution against parents without a showing of fault on their part and without due process. "Statutes are presumed constitutional, and such presumption must be overcome by proof showing unconstitutionality beyond a reasonable doubt." Vance v. Lincoln County Dep't of Pub. Welfare, 582 So.2d 414, 419 (Miss. 1991).
When a statute can be interpreted either as constitutional or unconstitutional, we have long held that we will adopt the constitutional construction. See Burrell v. Mississippi State Tax Commission, 536 So.2d 848, 858 (Miss.1988); Estate of Smiley, 530 So.2d 18, 22 (Miss.1988); and Craig v. Mills, 203 Miss. 692, 705-06, 33 So.2d 801, 804 (1948). If possible, we will construe it so as "to enable it to withstand the constitutional attack and to carry out the purpose embedded in the [statute]." Estate of Smiley, 530 So.2d at 22 [quoting Frazier v. State by and through Pittman, 504 So.2d 675, 708 (Miss.1987) ].
Wilson v. State, 574 So.2d 1338, 1340 (Miss. 1990).
¶ 6. The concept of restitution being imposed against a parent without fault for the behavior of his child by the youth court has not been considered by this Court. The constitutionality of such a law has been addressed in other jurisdictions. In In re Sorrell, 20 Md.App. 179, 315 A.2d 110, 114-16 (1974), the Court of Special Appeals of Maryland found that such a statute, with set limitations on liability, represented a legitimate exercise of the state's police power and the decision that it was preferable that parents without fault be directed to pay restitution rather than have the burden for losses suffered as a result of their children's acts fall on innocent and damaged parties.
¶ 7. The Supreme Court of New Jersey, in Board of Education of Piscataway Township v. Caffiero, 86 N.J. 308, 431 A.2d 799 (1981), commented on the rationale for vicarious liability of parents for their children's actions:
The existence of the parent-child relationship provides a rational basis for imposing liability and is a reasonable means to accomplish the purposes of compensation and deterrence. The United States Supreme Court has recognized that "parents have an important `guiding role' to play in the upbringing of their children." The Legislature could have reasonably believed that subjecting parents to vicarious liability for their children's willful and malicious acts of vandalism would encourage parents to exercise their "guiding role" in the upbringing of their children. Through better parental supervision and guidance, the Legislature hoped to deter delinquent conduct. Our concern is not whether that hope has been or will be fulfilled but whether there is a rational basis for it. Though we acknowledge the difficulties of being a parent, we cannot say that there is no rational basis for the statute.
Id. at 805 (citations omitted); see also In re William George T., 89 Md.App. 762, 599 A.2d 886, 890 (1992) (quoting Piscataway).
¶ 8. This Court stated, as to the state's police power, the following in Mississippi Public Service Commission v. Alabama Great Southern Railroad, 294 So.2d 173, 176 (Miss.1974):
In decisions too numerous to mention, it is firmly established that the legislature has the inherent authority as an incident to the police power of the state, subject to constitutional limitations, to prescribe laws and regulations for the purpose of safeguarding the health, safety and morals of the *479 inhabitants of the state and to promote public convenience and general welfare.
The exercise of such power is valid "if it is reasonably related to the attainment of that object, and if it is not oppressive, arbitrary or discriminatory." Hattiesburg Firefighters Local 184 v. City of Hattiesburg, 263 So.2d 767, 772 (Miss.1972).
¶ 9. After consideration, we find that the restitution statute at question is rationally related to a legitimate purpose and is a valid expression of the state's police power. It is the Legislature's judgment that the burden here should be borne by the parents, guardians or custodians of the juvenile at fault. It is further the Legislature's decision that such burden should be borne limited only by sufficient proof required by the statute. It is the Legislature's judgment that this may be accomplished through the youth court instead of the circuit court. It is not this Court's place to negate such a decision because we might prefer a different procedure.
¶ 10. When considering another restitution statute, Miss.Code Ann. § 99-37-3, we find this Court's pronouncement in Butler v. State, 544 So.2d 816, 821-22 (Miss.1989) (quoting Boddie v. Connecticut, 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)):
Sections (3) and (4) of § 99-37-3 indicate the necessity for a hearing before restitution can be assessed. The type hearing is not specified, but would require at a minimum, (1) notice to the defendant that victim restitution was being considered by the court, (2) the nature of such restitution considered, (3) an opportunity to the defendant to be heard and to object, and (4) a finding by the court to afford adequate appellate review. "... (P)ersons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard."
Section 43-21-619 says nothing about a hearing or the type of hearing to be held. In this case, all parties had notice that restitution was being sought, along with the amounts at issue. A hearing was held with counsel for the appellants present and allowed to present argument, cross-examine witnesses and object. This Court finds that the procedure followed by the Youth Court met due process requirements. Section 43-21-619 is not violative of the state or federal constitutions.

II.
¶ 11. The procedure followed in the youth court in this matter has been noted. The Youth Court Act provides a fairly detailed procedure for determining whether the juvenile in question is delinquent, and what disposition should be made of the matter, but says little procedurally about how restitution is to be determined. In this case, we have an order of adjudication finding BD to be a delinquent child; we further have a disposition order which commits BD to Columbia Training School. There is nothing in the record supporting these findings. The evidence presented at the restitution hearing went strictly to valuation of the damaged property in question.
¶ 12. Appellants cite In re Dan D., 57 Md.App. 522, 470 A.2d 1318 (1984), in which the Court of Special Appeals of Maryland construed a similar restitution statute in a similar factual situation. That court stated:
Ordinarily, a juvenile "case" consists of two separate and distinct proceedings  an adjudicatory proceeding to determine whether the child committed the delinquent act(s) alleged in the petition and, if the court so finds, a subsequent disposition proceeding to determine what, if any, type of court supervision the child requires. See § 3-801(b) and (n); In Re Ernest J., 52 Md.App. 56, 447 A.2d 97 (1982). Where restitution is sought against the child's parents, a third proceeding is required to determine whether the parents are indeed liable. This proceeding, though distinct in function and purpose from the adjudicatory and disposition proceedings, which are directed primarily at the child, may be held "as part of or "contemporaneously with" either the adjudicatory or disposition hearing. § 3-829(e); Md.Rule 918 a.
Whether a restitution hearing is conducted as part of an adjudicatory or disposition proceeding or separately, as is also permitted, one thing is clear: there must appear in the record at the restitution hearing not only the judicial findings that are a prerequisite to liability, but sufficient evidence to *480 support those findings. If the restitution hearing is conducted as part of or contemporaneously with the adjudicatory hearing, there is, of course, no need to have the same evidence introduced twice. So long as the parent being proceeded against has a full and fair opportunity to participate  to cross-examine witnesses, to challenge evidence, to present evidence on his own behalf  the evidence taken at that proceeding may and should be regarded as applicable not only with respect to the child's adjudication, but also with respect to the issue of restitution. If it suffices to establish the statutory criteria for liability, no more is required.
The problem arises when the restitution hearing is conducted later, either as part of a disposition proceeding or separately. The underlying facts pertaining to the delinquent act, having already been established, are not normally relitigated in a disposition hearing. But as we made clear in Matter of Sorrell, supra, 20 Md.App. 179, 315 A.2d 110, and again in In Re Appeal No. 769, Term 1974, 25 Md.App. 565, 335 A.2d 204, cert. den. 275 Md. 751 (1975), parental liability may not flow inevitably from a prior determination that the child is delinquent. As we said in Sorrell with respect to the predecessor statute to § 3-829 (art. 26, § 71A), a juvenile court judge may enter a restitution judgment only after a restitution hearing "wherein evidence is produced that is legally sufficient" to establish the statutory criteria. 20 Md.App. at 191, 315 A.2d 110.
This does not mean that the adjudicatory phase must be retried in every case. At least since 1973, a child's parents are made parties to the juvenile proceeding (§ 3-801(q); compare former art. 26, § 70-1(e), 1973 Repl.Vol.), and, in a delinquency case, they are required to be summoned in response to a juvenile petition. Md. Rule 904 c. In the ordinary case, subject to the right of all parties to produce additional relevant evidence, we see no reason why the record made at the adjudicatory (or a disposition) hearing, or an agreed synopsis of it, cannot be placed into evidence or otherwise made a part of the record in the restitution proceeding. See In Re John H., 49 Md.App. 595, 599-600, 433 A.2d 1239 (1981), aff'd 293 Md. 295, 443 A.2d 594 (1982). If that record, together with such additional evidence as may be admitted at the restitution hearing, suffices to establish the necessary conditions to liability, the requirements of both the statute and procedural due process, as it relates to this issue, will be satisfied.
In the case before us, this procedure was not used. As we have observed, no evidence whatever pertaining to the delinquent acts was offered in the restitution proceeding. The record made at the adjudicatory hearing was not made part of the restitution proceeding, and it is not included in the record now before us. It seems evident that everyone, including appellant, who appeared, participated, and was represented by competent counsel at the restitution hearing, took the underlying facts relating to the child's conduct and culpability as having been satisfactorily established; and the only evidence produced and the only evidentiary challenges made at the restitution hearing pertained to valuation. Although appellant objected to testimony by the victims as to the value of the property taken from their respective homes, at no time did he complain of the lack of evidence as to his son's involvement, and at no point did he move to dismiss the petition on that account.
Id. at 1321-22. The court reversed for failure to present sufficient proof of the required elements under the statute.
¶ 13. This case proceeded in much the same way as that noted in Dan D. We find the Maryland court's reasoning persuasive in this matter. Appellants argue that the State failed to offer proof of who exercised parental custody and control of the juvenile in question and whether the juvenile willfully or maliciously damaged or destroyed the property in question. Because this case involves this Court's initial construction of this statute, we recognize the failure to produce sufficient evidence as plain error under Miss .R.App. P. 28. There was no proof of any hearing or finding of parental control and custody, particularly on the part of RS, BD's stepfather. There was no finding that *481 RS had adopted BD. CD, the child's natural father, was summoned as the father of BD in this case. We find that where § 43-21-619(2) specifically allows restitution from "parents, guardians or custodians who exercise parental custody and control of a child", the youth court must make a specific finding, on the record, as to who exercises parental custody and control. There is something special about this case. It is a case of first impression: The constitutionality of the Youth Court Act is at issue and the constitutional application of the statute is at issue. While the statute is appropriately grounded in constitutional support there must be a careful attention to the application of the statute because it is penal in nature. In the case sub judice there was no evidence or proof as to "parental custody and control of the juvenile." This is plain error.
¶ 14. It may be true that by ignoring the failures of the record and apparent failures at the hearing we could affirm the finding. The law is better served and future usage of the statute before Youth Courts will be better served if we affirm the constitutionality of the act and reverse the findings in regard to restitution with attention to mechanics of application.
¶ 15. It is both common sense and constitutionally necessary to require that the court find from evidence who has parental control. In the case at hand there is a mother and a natural father and a "stepfather." There is no evidence as to the "control" or evidence of legal attachment of the stepfather to the minor. The law and common sense requires more of the record.
¶ 16. We do not suggest that the acts of the minor are not willful or unlawful, but we do suggest that the court below must pay attention to the constitution, the rules of evidence and the state of the record presented to this court. Oft times Youth Court matters are directed more to rehabilitation and limiting long range harm to the young person and to restitution to the victim than they are to adversarial presentations of evidence. In reviewing the record, this may well be the situation we find in the case at bar.
¶ 17. We do not reverse or remand the finding of delinquency and we find as constitutional the act and affirm it as desirable policy; however, awards of damage against parents or step-parents who are not the perpetrator of the wrongful act must be made carefully and on the record with full support of existing laws and evidentiary rules. If rulings have been made on the issue of custody and control by courts other than the youth court, this must also be noted on the record. We find that this matter must be reversed and remanded to the youth court, with any judgment of restitution to be supported by "on the record" findings concerning parental custody and control.

III.
¶ 18. In addition, DS and RS have offered several issues for consideration by the Court, specifically IV, VII, IX and X, but without the citation of authority on those issues. The policy of the Court, in the absence of special circumstances, is to refrain from addressing issues which are not supported by citations of authority. Johnson v. State, 642 So.2d 924, 929 (Miss.1994); Gerrard v. State, 619 So.2d 212, 216 (Miss.1993) (citing Wright v. State, 540 So.2d 1, 4 (Miss. 1989)). Such policy is appropriately applied to these issues, and we will not address them except with the following comments.
¶ 19. Appellants suggest that the youth court has awarded restitution, contrary to the mandate of § 43-21-619, in excess of the actual loss to the victims. The appellants complain that the youth court ordered a portion of the restitution to be paid to St. Paul Insurance Company, the insurer of the owner of some of the property damaged. It is urged that St. Paul was not a "victim" under the statute. Appellants' suggested application would require a narrower definition of the term "victim" than this Court is prepared to adopt. It is clear under the testimony of the restitution hearing that the owner of that property suffered loss to the extent of the insurance deductibles and the carrier suffered to the extent of the payments of the claims. Although not controlling, it is helpful to note that Miss.Code Ann. § 99-37-1 (1994), mentioned earlier, does specifically *482 define "victim" for the purpose of that act to include "any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities." We find that an insurance company may be a "victim" under § 43-21-619. We further find that any victim seeking restitution under § 43-21-619 should be made a party to the restitution proceeding, and that any proof of loss on behalf of the victim must be made part of the record. St. Paul Insurance Company was not made a party to the restitution proceeding. Proceeds of assessments against parties may be paid into the court if necessary.
¶ 20. In addition we are asked to construe Miss.Code Ann. § 93-13-2 (1994) as limiting the scope of § 43-21-619. The former, enacted in 1978 and later amended 1981, states:
(1) Any property owner shall be entitled to recover damages in an amount not to exceed two thousand dollars ($2,000.00), plus necessary court costs, from the parents of any minor under the age of eighteen (18) years and over the age of ten (10), who maliciously and willfully damages or destroys property belonging to such owner. However, this section shall not apply to parents whose parental custody and control of such child have been removed by court order or decree.
(2) The action authorized in this section shall be in addition to all other actions which the owner is entitled to maintain and nothing in this section shall preclude recovery in a greater amount from the minor or from any person, including the parents, for damages to which such minor or other person would otherwise be liable.
(3) It is the purpose of this section to authorize recovery from parents in situations where they are not otherwise liable and to limit the amount of recovery. The provisions of this section shall apply only to acts committed on and after July 1, 1978.
We reject the argument that § 43-21-619 is by implication amended or limited by a statute which addresses the liability of parents in direct civil actions against the parents. The two statutes address separate policy goals and there is no conflict between the two.
¶ 21. Appellants also complain that there was no finding by the youth court that they had the financial ability to pay restitution in the amount assessed. This issue is raised for the first time on appeal, and is therefore barred. See Carr v. State, 655 So.2d 824 (Miss.1995); Mack v. State, 650 So.2d 1289 (Miss.1994). It should be observed that the Legislature was clear in its intent to allow the youth court to impose restitution on parents and custodians for acts of minors which are willful or malicious and which result in injury or damage. Section 43-21-619 makes distinction as to the assessment, on one hand of medical bills, court costs and other rehabilitative expenses needed for the child and, on the other, of restitution. As to the first, § 43-21-619(1) allows assessment only upon "financially able parents." We decline to question the Legislature's wisdom in this distinction.
¶ 22. All other issues are procedurally barred from consideration for failure to raise them before the youth court and they appear to be without merit and require no discussion. We therefore reverse the judgment of the youth court and remand for further proceedings consistent with this opinion.
¶ 23. REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
PRATHER, C.J., SULLIVAN, P.J., and BANKS, J., concur.
McRAE, J., dissents with separate written opinion.
SMITH, J., dissents with separate written opinion joined by JAMES L. ROBERTS, Jr. and MILLS, JJ.
WALLER, J., not participating.
McRAE, Justice, dissenting:
¶ 24. I am compelled to dissent.
¶ 25. It is unconstitutional to require parents to pay, without fault, damages resulting from the malicious and willful acts of their children. A parent should be held liable for the willful or malicious actions of a child *483 only if there is a quantum of proof of the parent's negligence, including that parent's failure to restrain the child from intentional, willful or reckless conduct endangering others, when the parent has knowledge of the child's propensity toward such conduct. Under the Youth Court Act, parents are afforded no due process guarantees regarding determination of their culpability and are held per se liable for the acts of their children. To order parents to pay damages or restitution, it must be shown that the parents failed to exercise reasonable care in controlling a child, that some kind of principal-agency relationship existed giving the parents dominion over the child's actions, or that a statutory right existed pursuant to a grant of authority by a parent. See, e.g., Miss.Code Ann. § 63-1-9(2) (1996) (allowing children who are fifteen years of age to have driver's licenses under certain conditions).
¶ 26. Additionally, proceeding to hold parents responsible under the Youth Court Act violates the Mississippi Constitution. Without question, the right to jury trial is inviolate in this State. Robertson v. Evans, 400 So.2d 1214, 1215 (Miss.1981); Miss. Const. art. 3, § 31. Allowing a youth court judge to impose damages on parents based on a finding of delinquency deprives the parents of the right to jury trial. An adjudication hearing is hardly a crucible in which liability of a party can be determined fairly, especially where the judgment imposed by the youth court constitutes a civil judgment. If this procedure is to be treated as a civil judgment, the normal constitutional protections afforded by a civil jury trial should be adhered to. Miss.Code Ann. § 43-21-619 ignores the safeguards included in the right to trial by jury, and is unconstitutional.
¶ 27. Imposition of restitution pursuant to the Youth Court Act inordinately exacts liability upon those parents of children who have steadfastly rejected their parents' genuine efforts at being good mothers and fathers. Forcing parents to write blank checks is no answer to the continuing problem of delinquency. Statutes like the Youth Court Act, which sanction the visitation of the sins of children upon their parents without some proof of wrongdoing on the part of either or both parents, are fundamentally unfair, are totally repugnant to the concept of due process, and are violative of the constitutional right to trial by jury. Accordingly, I do not join the majority opinion.
SMITH, Justice, dissenting:
¶ 28. B.D., a fourteen year old minor went on a rampage during the week of April 13 through April 19, 1993 in Pike County committing ten delinquent acts, all of which would constitute felonies if committed by an adult. The offenses included burglary of a dwelling, business burglaries, and grand larceny involving the theft of four vehicles.
¶ 29. The Youth Court of Pike County caused to be issued a petition against the minor child alleging all of these ten offenses in language required by the appropriate statute. Process was served on the natural parents and the minor, and the court conducted an adjudication hearing on May 6, 1993, with all parties present and participating along with counsel representing the minor. B.D. was adjudicated a delinquent by the youth court for having committed these ten felonies.
¶ 30. A separate disposition/restitution hearing was conducted after the adjudication hearing on May 6, 1993 which found that the best interest of the child would be served by committing him to training school. The youth court, by order dated May 6, 1993, also found that restitution from the minor child and his parent was appropriate, but the amount of restitution would be determined at a later date. The order was filed of record on May 12, 1993. The juvenile, his parents and counsel had adequate and proper notice of the subsequently held restitution hearing.
¶ 31. On June 9, 1993, the hearing to determine the amount of restitution was conducted. The minor, his parents, and counsel were furnished proper and adequate notice concerning the hearing. The youth court file of the juvenile contained documents which set out the amounts of alleged damages and a list of those victims who had suffered loss of their property and/or funds. The minor, his parents, and counsel were present at the hearing, participated in the hearing, cross-examined all witnesses, and even stipulated *484 to some damages of a witness who was not present at the hearing. Defense counsel offered no testimony on behalf of the minor or his parents. The youth court found that restitution was proper and ordered that the juvenile and his parents, along with another juvenile offender and her mother, were responsible for damages in the amount of $19,782.93, including $10,964.00 which St. Paul's Insurance Company had paid in claims to some of the victims. A judgment reflecting the findings of the youth court was entered on July 12, 1993 and filed of record on July 29, 1993. Defense counsel's only issue ever raised concerning lack of any notice pertained to the filing of this restitution order. Counsel alleged that he was not tendered a copy of the order prior to its filing of record, as shown in his Motion for Out-of-Time Appeal, dated September 20, 1993 and filed of record on September 22, 1993.
¶ 32. The juvenile and his parents raise ten issues on appeal to this Court, of which only two were presented to the youth court. It appears from this record that at no point were the adjudicatory or dispositional proceedings ever challenged by the minor or his parents. In fact, the transcripts of these two hearings were not even forwarded to this Court by the appellants. Ford v. State, 708 So.2d 73, 74 (Miss.1998) ( "It is appellant's duty to preserve and prepare the record for appeal."), Kolberg v. State, 704 So.2d 1307, 1322 (Miss.1997) ("[I]t is the duty of the appellant to present a record of the trial sufficient to show that the error of which he complains on appeal has occurred ..."); Holland v. State, 705 So.2d 307, 350 (Miss. 1997); Jackson v. State, 684 So.2d 1213, 1226 (Miss.1996). The appellants only properly challenged the constitutionality of the statute which allows parents to be held responsible for a juvenile's offenses and they objected to St. Paul Insurance Company being allowed restitution, because in their view, St. Paul was no "victim" of a crime.
¶ 33. The majority, relying upon In re Dan D., 57 Md.App. 522, 470 A.2d 1318 (1984), finds that the proof was insufficient as to "who exercised parental custody and control of the juvenile in question and whether the juvenile willfully or maliciously damaged or destroyed the property in question." The majority, noting that this question was not raised in the youth court, nevertheless, would proceed as plain error under Miss.R.App.P. 28, and would reverse and remand this case for yet another hearing. I find myself in total disagreement with the majority and accordingly dissent.
¶ 34. There is nothing special about the circumstances of this case which would warrant proceeding under plain error. Issues I, II and VIII are procedurally barred. Issues IV, VII, IX and X are void of supporting authority. This Court need not and should not address issues which are not raised in the lower court. See Carr v. State, 655 So.2d 824 (Miss.1995); Mack v. State, 650 So.2d 1289 (Miss.1994). This Court is not required to address issues not supported by authority. Johnson v. State, 642 So.2d 924, 929 (Miss. 1994). See also Gerrard v. State, 619 So.2d 212, 216 (Miss.1993)(citing Wright v. State, 540 So.2d 1, 4 (Miss.1989)). Issues "unsupported and not argued are abandoned and need not be considered." Thibodeaux v. State, 652 So.2d 153, 155 (Miss.1995) (citing Pate v. State, 419 So.2d 1324, 1325-26 (Miss. 1982)).
¶ 35. In my view the reasoning of the Court of Special Appeals of Maryland in In re Dan D., adopted by the majority, is not only bad law, but is also severely lacking in common sense. The majority here, as in Dan D. is concerned that there was no evidence established at the restitution hearing to show who exercised parental custody and control of the juvenile in question and whether the juvenile wilfully or maliciously damaged or destroyed the victim's property. One parent had legal notice and both parents in fact were present at all three hearings. Additionally, the majority has failed to recognize a major distinction in the case at bar as compared to Dan D. In Dan D., no evidence regarding liability as determined at the adjudicatory hearing was made a part of the subsequently held disposition hearing. The court there even recognized that, "This does not mean that the adjudicatory phase must be retried in every case.... In the ordinary case, subject to the right of all parties to produce additional relevant evidence, *485 we see no reason why the record made at the adjudicatory (or a disposition) hearing, or an agreed synopsis of it, cannot be placed into evidence or otherwise made a part of the record in the restitution proceeding. If that record, together with such additional evidence as may be admitted at the restitution hearing, suffices to establish the necessary conditions to liability, the requirements of both the statute and procedural due process, as it relates to this issue, will be satisfied." Id. at 1321 citing In re John H., 49 Md.App. 595, 433 A.2d 1239 (1981), aff'd, 293 Md. 295, 443 A.2d 594 (Md.1982). (emphasis added). In the case at bar however, the youth court conducted a detention hearing on April 23, 1993, with the minor, his counsel and his mother and stepfather present. Process was properly served. An adjudication hearing was conducted on May 6, 1993. In attendance was the minor, and his mother and stepfather, his new attorney, Calvin Cosnahan. The minor was adjudicated a delinquent child. Immediately thereafter on the same day, the youth court judge conducted a dispositional /restitution hearing. Unlike the facts in Dan D., here the youth court judge placed the evidence of the adjudicatory hearing into the dispositional/restitution hearing. Judge Legette's disposition/restitution order reflects, "The adjudicatory hearing is hereby incorporated in this hearing. All of the parties are present that were at the adjudicatory hearing and announced ready." (emphasis added). Restitution was ordered with the amount to be determined at a subsequent date. On June 9, 1993 the youth court judge determined that $19,782.93 was the proper sum of restitution and judgment was awarded to the victims against the minor, his mother and his stepfather. The Judgment was filed on July 12, 1993. The mother and stepfather were ordered to pay restitution in the amount of $200.00 per month until the judgment was satisfied. The majority is simply mistaken that no proof of wilful guilt was shown at the disposition/restitution hearing. The proper procedure in fact was followed by the youth court judge. What is the necessity of yet a fourth hearing as required by the majority? Especially when there has been no due process violation and all parties were present and represented by counsel. Worst yet, the Court remands without instruction to the youth court judge. It is noteworthy that these issues in the instant case were never contested much less presented to the youth court judge. The appellants never challenged these findings made at the adjudicatory and dispositional/restitutional hearings. The appellants were only concerned with the order by the youth court judge that held them responsible for their child's damages to ten innocent victims of crime. No objection was raised by the mother and stepfather until the amount of restitution was determined. I perceive that the sole purpose of the fourth hearing is simply to allow the minor and his parents the opportunity to do what they previously did not do, but should have done, i.e., establish proof in the record of their claims of inability to pay restitution.
¶ 36. The majority expresses concern that supposedly the youth court conducted a disposition/restitution hearing without any evidence of wilful guilt of the minor or custody at the time of the events being incorporated into that hearing. As already shown heretofore, the record reflects otherwise. The petition filed against the juvenile, which is a part of this record before the Court, alleges wilful, unlawful acts committed by the juvenile, which resulted in a finding of delinquency by the youth court judge. It would be absurd to suggest that a juvenile who participated in ten serious incidents involving the burglaries of a home, various businesses and the grand larceny theft of four vehicles, all committed during a time frame of a mere seven days, was not doing so wilfully and intentionally. Regardless, the findings of delinquency by the youth court judge, unchallenged by the appellants should dispose of this question without the necessity of another hearing on remand. Nor is there any apparent concern raised by the parents about anyone other than them having the custody and control of B.D. during the time that the ten felonies occurred. They only challenged the youth court judge's finding that they should be held responsible for damages. Nor did the parents submit any evidence or argument that they could not afford to pay their share of the damages. Simply put, these parents do not want to have to pay for their child's *486 wilful, intentional damage wrought upon ten innocent victims. Nor do they want St. Paul Insurance Company classified as a "victim," and certainly do not want the insurance company to receive one penny of the $10,964.00 which the company has paid in claims to some of these innocent victims.
¶ 37. Here, the youth court judge held three separate hearings, all conducted with valid due process. The same judge and all parties and attorneys participated in the three hearings. The parents had a full and fair opportunity to participate, cross-examine witnesses, could have challenged the evidence, and could have presented evidence of their own. The Maryland Court and the majority of this Court, by adopting the language of this case, seem to require that the adjudicatory phase of a proceeding be retried in every case, or alternatively:
the record made at the adjudicatory(or a disposition) hearing, or an agreed synopsis of it, cannot be placed into evidence or otherwise made a part of the record in the restitution proceeding. See In Re John H., 49 Md.App. 595, 599-600, 433 A.2d 1239 (1981), aff'd. 293 Md. 295, 443 A.2d 594 (1982). If that record, together with such additional evidence as may be admitted at the restitution hearing, suffices to establish the necessary conditions to liability, the requirements of both the statute and procedural due process, as it relates to this issue, will be satisfied.
In re Dan D., 470 A.2d at 1321.
¶ 38. The majority equates the events of In re Dan D. to the case at bar and apparently insists upon requiring the State to reintroduce the proof submitted at the adjudicatory hearing in the dispositional/restitutional hearing, (which was done in this case), and once again when the youth court solely determined the issue of the amount of restitution. At no time did these parents ever question the lack of their child's participation and involvement in the ten felonies nor did they move the youth court to dismiss the petition filed by the county attorney for that reason. They did not question that the child was in their custody and control at the time when the delinquent acts occurred. Nor did the juvenile or his parents question lack of notice of the intent of the youth court to assess damages to the victims for the numerous felony acts committed by the juveniles against innocent victims. In fact, the record reveals complete awareness in that counsel for the juvenile, during the commencement of the restitution hearing stated, "we will anticipate after the testimony is presented [that restitution] will far exceed two thousand dollars." Counsel wanted the youth court to cap the damages at $2,000.00 and not proceed under the statute at issue which did not contain any such cap on damages.
¶ 39. The statute at issue, § 43-21-619 (1993), is constitutionally and socially well founded and was fully considered and adopted by the Legislature. The Legislature apparently believed that such a statute was necessary for the protection of the citizens of this state and their property. This is but an exercise of the State's police powers. Mississippi Pub. Serv. Comm'n v. Alabama Great S. R., 294 So.2d 173, 176 (Miss 1974). The Legislature logically reasoned that risk or loss of property of innocent victims of criminal acts committed by minors should legitimately be borne by the parents of the minors. Innocent victims in cases such as this one, must of necessity also include insurance companies, such as St. Paul, who have paid a substantial amount in claims to several of the victims, as well as the actual property owners who paid a deductible and lost use of their property. Most states have adopted comparable legislation. In re Sorrell, 20 Md. App. 179, 315 A.2d 110, 114-16 (1974). Apparently they all have reasoned, as did the Mississippi Legislature, that the parents of juveniles who commit delinquent acts against innocent victims which result in damages due to the loss of property should be required to compensate those who are damaged, rather than allow such loss to fall upon the innocent victims of such a crime, including insurance companies who pay claims to these victims. I suspect the Mississippi Legislature will promptly revisit § 43-21-619 (1993) as a result of this Court's actions if for no other reason than to define "victim" more appropriately to include an insurance company under facts identical to those in the case at bar.
*487 ¶ 40. The decision of the youth court judge should be affirmed. I respectfully dissent.
JAMES L. ROBERTS, Jr. and MILLS, JJ., join this opinion.