REYNOLDS *et al. v.* DAVIDOW

(In Banc.  Oct. 28, 1946.)

[27 So. (2d) 691.  No. 36183.]

Barnett, Barnett, Jones & Stone and Francis S. Bowling, all of Jackson, for appellants.

482

Hubert Lipscomb, of Jackson, for appellee.

Argued orally by **Francis S. Bowling**, for appellants, and by **Hubert Lipscomb**, for appellees.

**Alexander, J.**, delivered the opinion of the court.

Petition for writ of habeas corpus was filed by appellee for the custody of the twin children of appellants. Upon the hearing, the prayer of the petition was granted.

A recital of the details of the testimony upon which the parents were found unsuitable to the custody of the children would accomplish no more than a chronicle of disturbing events and circumstances. It is not helpful to cite cases whose diverse factual patterns serve only to support the right of the parent or disclose its forfeiture.

In the kaleidoscope of human relationships, the rude and realistic hand of fate jostles the facts and their actors into ever changing patterns, and through its lens the courts view constant rearrangements into designs which never repeat. There is only one constant. This is the dominant and natural right of the parent to the custody and care of the child. So long as this right is not forfeited by conduct or conditions which adversely affect the welfare of the child, mere considerations of comparative well-being are no concern of the State whose continuing guardianship of its infant wards may supervise but never supersede its natural guardian.

It is not exact to say that the controlling principle is the mere welfare of the child for the law does and must recognize that its welfare is presumed to be best promoted by parental custody. Against this presumption, the pressure of mere assertion that the material advantages of a better culture or a more lavish provision are elsewhere available may not prevail. To say that the parent has the right to rear his child in decent poverty is but to acknowledge that the right to share the lot of those of whom the child is part is more fundamental than the measure of the lot itself. As this right becomes impaired by conduct or conditions which strip off the fabric of

which this presumption is fashioned, the State has the duty to assume the responsibilities which the parent has discarded. It is then that the welfare of the child emerges as an important factor. The State in compelling parental solicitude must be never lax in manifesting its own. Yet it withholds its own powers until the parent abandons the child or by unfitness abandons his rights.

The sordid recitals of this record show that these twin children have been throughout their brief years the innocent and injured bystanders amid the riotous contentions of unhappy and disordered households. It was not unreasonable for the chancellor to find that exposure to these influences was apt to infect these wards with disorders which lie too deep for superficial treatment, and which, though healed by the slow processes of a reawakened and repentant ministration, may leave their spirits pockemarked with persisting scars. The only promises thus far forthcoming from appellants are those whose tenor lends to them the aspect of a threat to the peace and welfare of these hapless and forlorn pawns in a cruel game whose rules have been flouted with a ruthless disregard.

We must deal here with a condition and not a theory. We visit no condemnation upon the adult actors in this distasteful drama, nor do we measure and allocate to each his several liability. We purposely make impersonal our comments lest emphasis upon the resultant situation be lost, and lest our course be inconsistent with appellants' quickened hope for and purpose toward a better justification.

The task of the learned chancellor was difficult. Between conflicting claims of such gravity lies no middle ground. Each several claim, unanswered by impeaching fact or circumstance could stand alone to support its advocate. It was the duty and function of the trial court to divine the answer to the problem of mixed law and fact, in accordance with the relative strength of the rights of the petitioner, the parent, and the children. After

full revelation of the facts supporting each right, he found that the parents had in law abandoned the children and were unsuitable. We do not substitute a contrary judgment.

We notice the appellants' contention that by an amended decree the chancellor sought to retain jurisdiction over the children and to exercise a control substantially in accord with Section 7191 et seq., of the Code of 1942, including the right to change the custody under altered circumstances. Such assignment of error would require an examination of the applicability of the cited sections, enacted primarily as part of the Juvenile Court Act, to proceedings by habeas corpus under which the award is ordinarily unconditional. We forbear to pursue this contention since appellants could not have been aggrieved thereby.

We need add only that the findings of the decree are to be tested by the existing facts. The learned chancellor has destroyed no bridges over which appellants may retrace their course with an enlightened and chastened purpose and by reclaiming themselves seek anew to reclaim their children.

Affirmed.

**Sydney Smith, C. J.**, took no part in this decision.