CARLTON, J., for the Court:
¶ 1. On November 16, 2009, Richard P. Sizemore (Richard) filed a “Motion for Writ of Habeas Corpus & for Other Relief’ in the Jackson County Chancery Court, seeking to have his fifteen-year-old son, John Blake Sizemore (Blake), removed from the home of Francis Clifton Pickett (Cliff), Blake’s older half brother, in Colorado Springs, Colorado, and returned to him in Ocean Springs, Mississippi. In Richard’s petition for habeas corpus, he asserted entitlement to custody as the natural parent and provided while his previous judgment of divorce awarded his wife, Blake’s mother, custody of the children, his former wife was deceased.
¶ 2. On December 15, 2009, the chancery court initially granted Richard’s writ of habeas corpus and ordered Cliff to return Blake immediately to Richard. Then, on January 4, 2010, Cliff filed a motion to reconsider and a motion for emergency injunctive relief, wherein Cliff asserted the court lacked personal jurisdiction over him and alleged, among other things, he received improper service and notice via fax contrary to the requirements of Mississippi Rule of Civil Procedure 81 for service of out-of-state defendants.[1] In addition to Cliff’s assertions of lack of personal jurisdiction, Cliff raised the issue of parental fitness before the court, asserting Richard was not entitled to the natural-parent presumption for custody because Richard abandoned Blake and his other siblings upon the death of their mother in 2005 by failing to support them, by failing to exercise his visitation, by doing nothing to assist them, and by failing to seek custody for almost five years. Cliff also averred, even though Richard allowed Cliff to raise Blake and his siblings, Richard now sought to have Cliff arrested for providing such support to them. The chancery court set the motions for hearing on January 5, 2010. However, on January 5, 2010, the court reset the hearing by agreed order for June 7, 2010.[2]
*792 ¶ 3. Then, on April 23, 2010, Richard’s attorney, David C. Morrison, filed a motion to withdraw, asserting Richard refused to cooperate and communicate with him and refused to answer correspondence from his attorney.[3] On May 10, 2010, Cliffs attorney filed a response opposing the motion to the extent it would delay the hearing previously set for June 7, 2010, arguing Cliff had already incurred expenses by making arrangements to attend the June 7, 2010 hearing in Mississippi. Then, on June 4, 2010, Richard’s attorney mailed Richard a copy of a motion for continuance of the June 7, 2010 hearing.
¶ 4. The chancery court held the hearing on June 7, 2010, as scheduled by the prior agreed order. However, despite the prior agreed order resetting the hearing for June 7, 2010, Richard failed to appear and also failed to communicate with the court or his attorney prior to or on the date of the June hearing. At the hearing, Cliffs attorney argued against the grant of a continuance, raising hardship and expense incurred due to Cliff and Blake’s travel expenses to attend the hearing from Colorado. The court then proceeded with the hearing. Following the hearing, the chancellor entered an order noting that Richard failed to appear at the hearing and finding that custody with Cliff served Blake’s best interest.[4] Then, on July 30, 2010, the chancery court entered an order allowing Richard’s attorney to withdraw nunc pro tunc to June 7, 2010. Richard sent a post-trial letter to the court asking for a continuance of the hearing already held, but he filed no post-trial motions for relief pursuant to Mississippi Rules of Civil Procedure 59 and 60.
I filed a notice of service of discovery; and on March 2, 2010, I sent a letter to Mr. Morrison advising that the responses to discovery for Mr. Sizemore ... were late. On March 24, 2010, I filed a motion to compel. Then[,] on April 22, 2010[,] sent a request for admission to Mr. Morrison for Mr. Richard P. Sizemore, petitioner, to respond to that. There was a motion to withdraw. Your Honor, it was actually dated April 21, 2010. However, it was filed with the [c]ourt ... April 23, 2010.
¶ 5. Richard now appeals to this Court, arguing the chancery court erred in failing to continue the June 7, 2010 hearing and by inappropriately considering the Al-bright factors in its award of custody of Blake to Cliff. Finding no error, we affirm.
FACTS
¶ 6. Richard and Peggy Lenelle Size-more married on October 4, 1980. The marriage produced four children: Olivia, born July 22, 1980; Lauren, born September 29, 1987; Natalie, born December 14, 1988; and Blake, born August 20, 1994. On May 6,1997, a judgment of divorce was filed in the Jackson County Chancery Court. The court granted Peggy physical and legal custody of the children and granted Richard visitation.
¶ 7. Peggy died on May 11, 2005. Following her death, Blake lived with his aunt on the Mississippi Gulf Coast until the home was destroyed by Hurricane Katrina. Then, in October 2005, Blake moved to Cliffs home in Colorado Springs, Colorado.
*793 ¶8. Years later, in 2008, Blake moved back to live with Richard in Mississippi for four brief months. According to testimony from Cliff and John Sizemore[5] at the June 7, 2010 hearing, Blake asked to return to Colorado after a few months of living with Richard due to the volatile and unstable home environment provided by Richard. Additionally, John, Richard’s own father, and Cliff both testified at the hearing that allowing Blake to remain with Cliff served Blake’s best interest.
¶9. In the motion filed by Richard’s attorney, Morrison, on April 28, 2010, to withdraw his representation of Richard, the attorney explained Richard failed to honor his contractual obligations, exhibited an uncooperative attitude, and failed to communicate with him. In essence, Richard’s conduct and failure to communicate prevented his attorney from representing him and from continuing to represent him. The motion was signed and dated on April 21, 2010, and mailed to Richard. However, Richard never responded to his attorney’s attempts to communicate with him, and the motion was never noticed or heard.
¶ 10. The record also contains a motion for continuance signed by Morrison, Richard’s attorney, and dated June 4, 2010.[6] The motion for continuance stated Morrison was representing another client in a federal trial and could not attend the June 7, 2010 hearing. Morrison’s motion also stated he mailed a copy of the motion for continuance to Richard. The record includes a handwritten letter from Richard to the court written after the habeas corpus hearing was over. In the letter, Richard acknowledged receipt of a copy of the motion for continuance on June 5, 2010, and Richard explained that when he received a copy of the motion for continuance, he cancelled his transportation to the June 7, 2010 hearing. In his post-trial letter to the court, Richard does not claim he received any communication from the court that the continuance was approved, and Richard does not claim any attempt by him to communicate with the court or with his attorney in deciding to not appear or upon his failure to appear.
¶ 11. Even though Richard failed to appear at the hearing on June 7, 2010, without communicating with the court or his attorney, the post-trial letter from Richard shows Richard knew about the June 7, 2010 hearing. The record further shows no communication from the court or otherwise indicating that the continuance had been approved by the court or that the hearing date had been reset from the previously scheduled date of June 7, 2010.
¶ 12. Aggrieved, Richard appeals.
STANDARD OF REVIEW
¶ 13. In our review of this case, we must first acknowledge Richard filed a writ of habeas corpus for custody of his son.[7] In habeas corpus proceedings pertaining to the custody of children, the trial court possesses the duty to determine the matter in accordance with the strengths of the rights of the petitioner, the parent, and the children; and this Court will not substitute its judgment for that of the chan- *794 eery court. Reynolds v. Davidow, 200 Miss. 480, 485-86, 27 So.2d 691, 692 (1946); see Walker v. Williams, 214 Miss. 34, 42, 58 So.2d 79, 81 (1952). The best interest of the child[8] is the controlling issue in a habeas corpus proceeding[9] pertaining to the custody of a minor.[10] Bubac v. Boston, 600 So.2d 951, 954 (Miss.1992); see Smith v. Watson, 425 So.2d 1030, 1033 (Miss. 1983) (“In .resolving such custody matters!,] the best interest and welfare of the child is the key.”). The State stands in parens patriae when parental fitness and the child’s welfare are placed in issue before the chancellor in a habeas corpus proceeding. See generally Neal v. Neal, 238 Miss. 572, 577, 119 So.2d 273, 275 (1960). In this case, the pleadings of the parties squarely place the issue of parental fitness before the court in its best-interest determination. In Neal, as in the case before this Court, the parent sought the aid of the court, and the defendant was not a party to the prior court decree. Id. at 579, 119 So.2d at 276 (citations omitted).
¶ 14. Additionally, we review the chancellor’s decision to deny a motion for continuance for abuse of discretion. Robinson v. Brown, 58 So.3d 38, 42 (¶ 10) (Miss.Ct.App.2011).
DISCUSSION
¶ 15. Richard argues, pro se, that the chancellor erred by awarding custody of Blake to Cliff; and in support of his claim, he asserts the chancellor inappropriately applied the Albright factors to the determination of custody in this habeas corpus proceeding. Richard also argues the court erred in failing to grant a continuance for the June 7, 2010 hearing, and he asserts the court should not have held the June 7, 2010 hearing without his presence. Richard’s claimed error attacks the sufficiency of the judgment, the court’s denial of a continuance, and the court’s denial of his habeas corpus petition.
¶ 16. After reviewing the record before us in accordance with our standard of review, we find sufficient evidence in the record to sustain the judgment of the chancellor denying Richard’s petition and granting custody to Cliff. We further find no abuse of discretion in the chancellor’s decision to proceed with the hearing on June 7, 2010, and to not grant a continuance. We note the laws of this State provide a speedy remedy in habeas proceedings. Cole v. Cole, 194 Miss. 292, 12 So.2d 425, 426 (1943).
*795 ¶ 17. We will now turn to a review of the alleged errors separately with more particularity.
Purpose of Habeas Proceedings
¶ 18. Richard asserts the chancellor inappropriately considered an Al-bright analysis since he was the natural parent. This alleged error raises the issue of whether the chancellor properly applied the law herein and challenges the sufficiency of the evidence. We find in a habeas corpus proceeding for custody, the best interest of the child constitutes the controlling issue.[11] Bubac, 600 So.2d at 954. See 4 A.L.R.3d 1277 (1965). We also recognize the supreme court in Neal, 238 Miss. at 577, 119 So.2d at 275, clarified that in habeas corpus proceedings for custody wherein issues are raised pertaining to the child’s welfare and parental fitness between a third party and a parent, the court possesses a duty to determine the best interests as parens patriae. In this case, the chancellor appropriately recognized the distinct purpose of a habeas corpus proceeding for custody as reflected by his comments at the June 7, 2010 hearing:
My understanding is when you file a[w]rit of [h]abeas [cjorpus, the [c]ourt at that point is obligated to go to a best interest test. And the [c]ourt doesn’t have to do [an] Albright analysis. It is my policy, however, that I do [an] Al-bright analysis anyway because I consider the two to be so closely related. That’s what do in [w]rit of [h]abeas [c]orpus.
 ¶ 19. Richard’s argument on appeal fails to embrace jurisprudence establishing that natural parents can forfeit their presumption to custody by their conduct and conditions. The rights or interests in a habeas corpus proceeding involving the custody of a child, involve the rights of the child, the parents, and those who have for years discharged the obligations of the parents. See 39 C.J.S. Ha-beas Corpus § 219 (2003). However, the paramount considerations in a habeas corpus proceeding for custody remain the welfare and best interest[12] of the child. Id. See Oktibbeha County Dep’t of Human Servs. v. N.G., 782 So.2d 1226, 1235 (¶43) (Miss.2001); Neal, 238 Miss. at 577, 119 So.2d at 275. In reviewing the sufficiency of the evidence in support the judgment below, we acknowledge that Mississippi precedent in habeas corpus child-custody cases requires affirmance of the chancellor’s judgment if the evidence supports the judgment, even if the chancellor fails to provide findings of fact. Walker, 214 Miss. at 38, 58 So.2d at 80.
Sufficiency of the Chancery Court’s Findings
¶ 20. With respect to the specific findings in the present case, the record reflects the chancellor stated he would provide findings of fact and conclusions of law post trial upon request of a party. However, the chancellor provided general findings acknowledging applicable law, stating that Blake’s best interest was served by awarding custody of Blake to Cliff. The judgment also reflects a brief summary of the facts, basis for jurisdiction, and dispositions of the court. The judgment specifically found Richard failed to appear, included a no-contact order,[13] *796 and denied Richard visitation until such time as Richard made an appearance before the chancery court. The record reflects no post-trial motion by Richard asking the court for more specific findings and shows Richard failed to appear before the chancellor.
¶ 21. Since Richard failed to request relief or more specific findings post trial, precedent requires no remand for such findings upon appellate review, where substantial evidence clearly supports the judgment, and the chancellor provided sufficient general findings. See M.R.C.P. 52.[14] The record reflects the chancellor set forth general factual findings in the case at hand and also stood ready to provide more specific findings post trial upon request.[15] Richard’s complaint fails to acknowledge the unique purpose of habeas corpus proceedings prosecuted to determine custody.
Review of Precedent in Habeas Corpus Proceedings for Custody
¶ 22. As a general rule:
[W]here habeas corpus is prosecuted for the purpose of determining the right to the custody of a child, the inquiry extends far beyond the issues that ordinarily are involved in a habeas corpus proceeding. The court, in passing upon the writ in a case involving the custody of a child, deals with a matter of an equitable nature; it is not bound by any mere legal right of [a] parent or guardian, but is to give his or her claim to the custody of the child due weight as a claim founded on human nature and generally equitable and just. A court is in no case bound to deliver a child into the custody of any claimant or of any person, but should, in the exercise of a sound discretion, after a careful consideration of the facts, leave it in such custody as the welfare of the child at the time appears to require. In short, the child’s welfare is the supreme consideration, irrespective of the rights and wrongs of its contending parents, although the natural rights of the parents are entitled to due consideration.
4 A.L.R.3d 1277.
¶23. In the case of Mitchell v. Powell, 253 Miss. 867, 877-78, 179 So.2d 811, 815-16 (1965), the Mississippi Supreme Court addressed the limited powers of a court in habeas corpus proceedings. The supreme court explained that in habe-as corpus proceedings, jurisdiction fails to encompass perpetual jurisdiction, and the court in a habeas corpus proceeding tries a single cause, and upon rendering final judgment, the court’s powers and functions cease. Id. at 877-78, 179 So.2d at 815. In its analysis, the court distinguished the chancery court’s authority over matters touching matters pertaining to the determination of custody of children,[16] from the chancery court’s authority to grant the remedy sought in habeas corpus proceedings.[17] Id. at 877-78, 179 So.2d at 815. Similarly, the supreme court in Bubac, 600 So.2d at 955, recognized courts in habeas corpus proceedings possess temporary jurisdiction only to affect custody of the child in accord with the child’s best interest.
¶ 24. We further recognize this Court previously held that in habeas corpus proceedings, in determining the single *797 cause of the child’s best interest before it, the chancellor can ignore prior decrees where circumstances and conditions arising since the decree show the party awarded custody is unfit to exercise or has abandoned custody of the child. Smith, 425 So.2d at 1032. See generally B9A C.J.S. Habeas Corpus § 382 (2003). We acknowledge precedent establishes that where the custody proceeding lies between a parent and a third person, the third party bears the burden of proof to show the rights of parents have been forfeited, surrendered, or otherwise lost and that the best interest of the child will be served by withholding or removing the child from the parent and that the parent is unfit.[18] Id.
¶25. Hence, the Mississippi Supreme Court recognizes jurisprudence re-buttably presumes the best interest of the child are served by his or her parent having his or her care and custody, unless the parent is shown to be an unsuitable person to have the care and custody, or has abandoned the child. Walker, 214 Miss. at 42, 58 So.2d at 81. In Walker, the supreme court recognized in habeas corpus proceedings, the chancellor’s judgment should be affirmed if the evidence was sufficient to sustain the judgment. Id. at 49-50, 58 So.2d 79, 58 So.2d at 85. The supreme court acknowledged in its review that the trial judge provided no specific findings of fact when denying the natural mother’s petition. Id. at 38, 58 So.2d 79 58 So.2d at 80. The Walker court further explained the reviewing court must, therefore, assume the trial judge found disputed issues of fact in favor of the defendants. Id. at 38, 58 So.2d at 80.
¶26. In Walker, the supreme court then reviewed the evidence in the record presented at the habeas corpus proceeding to determine if the record supported the chancellor’s judgment. Id. at 39-50, 58 So.2d 79, 58 So.2d at 80-85. After doing so, the supreme court in Walker found the evidence supported a finding of abandonment by the mother of the child and affirmed the lower court’s decision, even though the lower court provided no findings in support of its judgment. Id. at 45-50, 58 So.2d 79, 58 So.2d at 83-85. In the case before us, the chancellor provided general findings in rendering its judgment, and his findings reflect he also considered the Albright factors. The chancellor in the case before us also stood ready to provide additional findings post trial upon request.
¶ 27. The supreme court in Walker further explained a parent may abandon a child by “contributing nothing to [the child’s] support, taking no interest in [the child], and permitting [the child] to remain continuously in the custody of others, substituting such others in his own place so that they stand in loco parentis to the child, and continuing this condition of affairs for so long a time that the affections of the child and of the foster parents have become mutually engaged to the extent that a severance of this relationship would surely result in destroying the best interest of the child.” Id. at 46, 58 So.2d at 83 (citations omitted).[19] Moreover, the court *798 in Walker explained that such evidence of abandonment, as described by the court, “conclusively rebuts and overthrows the legal presumption that the welfare of the child would, other things being equal, be best served by the custody and control of the parent.” Id. at 47, 58 So.2d at 83 (citations omitted).
¶ 28. In Reynolds, 200 Miss. at 483-86, 27 So.2d at 691-92, also a habeas corpus case, the Mississippi Supreme Court again found the best interests of the children were served by an award of custody to a third party instead of the natural parents. The supreme court found the children were innocent and injured bystanders to riotous contention of an unhappy and disorderly household. Id. at 485, 27 So.2d at 692. Significant to our analysis, the court in Reynolds further explained the right of a natural parent to custody can be forfeited by conditions or by conduct adversely affecting the child. Id. at 483-85, 27 So.2d at 691-92.
¶ 29. The pleadings in this habe-as corpus proceeding raise the issue of Blake’s best interest and welfare and Richard’s parental fitness before the chancellor. Furthermore, upon review, we find the evidence in the record, specifically the testimony of John, Richard’s own father, and the testimony of Cliff, provides substantial evidence supporting the denial of Richard’s habeas corpus petition with evidence that Richard’s own conduct adversely affected Blake’s safety and welfare. Therefore, the chancellor properly considered both Blake’s best interest and welfare in the habeas corpus proceeding.[20]
¶ 30. At the June 7, 2010 hearing, John, Richard’s father,[21] testified Richard failed to care for or support Blake[22] since Blake’s mother’s death, and Blake thrived under Cliffs care in Colorado. John testified he thought Richard possessed suspect motives, desiring custody of Blake for monetary (pecuniary) reasons. John testified:
[COURT]: Why does [Richard] want custody of this child? Your son?
[JOHN]: Honestly?
[COURT]: Yes, sir.
[JOHN]: I think there is some money involved.
[COURT]: What money?
[JOHN]: He’s on disability and if he gets custody of Richard [sic][,] he can also get the other benefits that goes with it.
[COURT]: Is there any other money other than that?
[JOHN]: Well, I imagine that there is probably meal money, that’s what they call it.
[COURT]: What about life insurance? Was there any life insurance on him?
[JOHN]: I don’t think there is any life insurance!,] but medical insurance would be involved.
¶ 31. Cliff testified at the hearing that he cared for Blake for the majority of *799 Blake’s life, and he could adequately continue to provide for Blake. Cliff testified Blake participated in extracurricular activities, including sports, in Colorado Springs; and Blake had also been involved in the youth group at church in Colorado. Cliff testified he held a management position; and he, his wife, and their child provided a stable home environment for Blake. Cliff further testified he feared Blake’s return to the environment provided by Richard. Cliff feared Blake would be harmed in Richard’s custody due to Richard’s drinking problems and abusive behaviors. Cliff testified during the brief time that Blake lived with Richard, Blake called him crying and begging to return to Colorado.
¶ 32. Significantly, John’s testimony was consistent with Cliffs, explaining that he picked Blake up from behind “the telephone pole” when Blake fled from Richard’s house, and John assisted in getting Blake back to Colorado to live with Cliff. At the hearing, the following testimony was presented, which described the tumultuous end to Richard’s attempt at caring for Blake:
[JOHN]: This all started — Richard and his girlfriend tried to bring me into Court before the [g]rand [j]ury here in Jackson County for kidnapping. I was the one that went and picked him up from-behind the telephone pole down from the house when all this started.
[COURT]: You picked the child up?
[JOHN]: Blake up, yes, sir. In turn[,] I brought him to his aunt’s[,] and his aunt turned him over to his sister who brought him back to Texas. And they
sent him back to Colorado where he belonged.
[COURT]: So, you think the best place for him to be is out there?
[[JOHN]]:[23] That is the best place for him to be. He has no business with this father.
[COURT]: That’s your son you are talking about.
[JOHN]: I know.
[COURT]: [Roberta Sizemore], do you agree?
[ROBERTA]:[24] Yes, sir. I do.
¶ 38. In applying precedent to this case, similar to Reynolds and Walker, we find substantial evidence exists in the record to support the chancellor’s judgment finding that Blake’s best interest was served by awarding custody to his older brother, Cliff, instead of awarding custody to his natural father, Richard. Additionally, the record reflects the chancellor properly applied the law, provided sufficient findings, and substantial evidence supported the chancellor’s judgment.
Failure to Appear
¶ 34. We find Richard’s claim that he received inadequate notice of the June 7, 2010 habeas corpus proceeding without merit, and we find no abuse of discretion in the chancellor’s decision to proceed with the habeas corpus proceeding and to not grant a continuance of the hearing. See Robinson, 58 So.3d at 42 (¶ 10). The June 7, 2010 hearing had been scheduled since January 2010 by agreed order, and the record clearly shows Richard knew the hearing was reset for June 7, 2010, from January 2010.[25] See generally *800 Dufrene v. Slade, 21 So.3d 703, 705 (¶ 9) (Miss.Ct.App.2009) (finding adequate notice of trial date set by agreed order was provided and failure to appear does not warrant relief) (citing M.R.C.P. 40(b),(c)). Additionally, the laws of this state provide a speedy remedy in habeas corpus proceedings. See Cole, 12 So.2d at 426. The judge in a habeas corpus proceeding may not prolong by special order its powers or jurisdiction. Bubac, 600 So.2d at 953 (citation omitted).
¶ 35. A review of Richard’s own handwritten letter in the record to the chancery court after the June 7, 2010 hearing, demonstrates Richard was aware of the June 7, 2010 hearing. In the letter, Richard acknowledged receiving a copy of the “motion” of continuance. Richard also complained in the letter that the chancellor decided to proceed with the hearing, and in this post-trial letter, Richard requested a continuance. Despite the chancellor’s acknowledgment in his judgment that Richard’s rights would be revisited upon his appearance before the court, Richard failed to appear post trial to seek relief from the chancellor. Furthermore, Richard does not claim he received an order from the court granting the continuance, and Richard asserts no denial of his awareness that the hearing was reset from January 5, 2010, to June 7, 2010, by agreed order. As evidenced by his letter to the court contained in the record before us, Richard failed to appear at the June 7, 2010 hearing and failed to communicate with his attorney and the court at his own peril.[26]
¶ 36. Based on the foregoing reasons, we affirm the judgment of the chancellor. See Bubac, 600 So.2d at 954.
¶ 37. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.

. Cliff's motion provided Richard’s writ of habeas corpus had been faxed to him, an out-of-state defendant, in violation of Mississippi Rule of Civil Procedure 81. “Rule 81(d) prescribes the form of summons to be used; however, the method of service is governed by Rule 4.” Deborah H. Bell, Bell on Mississippi Family Law § 19.03 (1st ed. 2005). A nonresident defendant may be served:
in any manner available for service on a resident defendant. In addition, a nonresident defendant may be served by mailing a copy of the summons and complaint by certified mail, return receipt requested. For service on an individual, the envelope must be marked “restricted delivery.” A nonresident defendant may be served by publication. However, the court will not have jurisdiction to address property division, alimony, or child support. Furthermore, personal service of process on a nonresident defendant will not confer personal jurisdiction over a defendant who lacks the minimum contacts with the state necessary to satisfy due process requirements.
Bell, § 19.03[2][b],

. At the June 7, 2010 hearing, Cliff’s attorney, Dustin Thomas, stated:
[O]n January 4, 2010, I, on behalf of [Cliff] filed a motion to dismiss or reconsider the issuance of the [wjrit of [hjabeas [c]orpus and for emergency injunctive relief. That was set for a hearing on January 5, 2010[,] before Your Honor. On that day ... all the parties to my recollection!,] at least myself *792 and Mr. Morrison [Richard’s attorney] were here. Met with the [c]ourt and on that date agreed that we would set a hearing for — on these matters for today's date, June 7, 2010. That was the order actually setting the trial date. It was an agreed order set that day by Your Honor and counsel for both parties on January 5, 2010.

. At the hearing on June 7, 2010, Thomas stated:

. At the conclusion of the hearing, the chancellor noted for the record that the award of custody to Cliff satisfied the Albright factors.

. John is Richard’s father and Blake’s grandfather.

. Cliff opposed the motion to withdraw and the motion for continuance because he opposed any delay in the proceedings due to the hardship and expense of travel to the hearing.

.See Miss.Code Ann. §§ 11-43-1 (Rev.2002); 11-43-7 (Rev.2002) (providing chancery courts the authority to grant a petition for writ of habeas corpus); 9-1-19 (Rev.2002) (vesting courts with the authority to grant remedial writs); 9-5-81 (Rev.2002). See generally Miss. Const. art. 3, § 21.

. See Miss.Code Ann. §§ 93 — 5—24(l)(e)(i) (Rev.2004) (stating that upon finding the natural parents have abandoned or deserted the child, or the parents are unfit, the court may award physical and legal custody to person with whom the child resides in a stable environment); 11-43-11 (Rev.2002) (if shown that petitioner is not entitled to relief, the court may refuse to grant the petition for habeas corpus).

. See Smith v. Watson, 425 So.2d 1030, 1032 (Miss. 1983) (providing that in habeas corpus proceedings, "the habeas corpus court can disregard the prior decree where circumstances and conditions arising since the decree show that the party awarded custody is unfit to exercise or has abandoned custody of the child.”); Mitchell v. Powell, 253 Miss. 867, 878, 179 So.2d 811, 815-16 (1965) (citing Talley v. Womack, 249 Miss. 773, 777, 163 So.2d 742, 744 (1964) (explaining the limited powers of a judge in habeas corpus proceedings)).

.See generally Wade v. Lee, 471 So.2d 1213 (Miss. 1985) (holding that even though chancery court previously ordered child custody in favor of former wife, temporary award to former husband in habeas corpus proceeding was in best interest and welfare of the child where former wife was a continuous drug user and had become emotionally unstable); Roach v. Lang, 396 So.2d 11 (Miss.1981) (discussing habeas corpus custody petitions that go beyond mere legal petition alleging unlawful detention where the petition itself raises the issue of best interest and who should have custody and the parents obligations).

. See Miss.Code Ann. §§ 93-11-65 (Supp. 2011); 11-43-7; and 93-5-24.

. See also Miss.Code Ann. § 93-5-24 (custody with parent of history of domestic abuse rebuttably presumed to not be in child’s best interest).

.The chancellor provided; "The petitioner Richard P. Sizemore is enjoined from bothering, harassing, or interfering with the Respondent Francis Clifton Pickett, either on the telephone, through electronic means, or by any means whatsoever.”

.See also Myers v. Myers, 741 So.2d 274, 277-78 (¶ 11) (Miss.Ct.App. 1998) (“A court has technically complied with the mandates of Rule 52 where it makes general findings of fact and conclusions of law although requested by a party to make specific findings.”).

. See M.R.C.P. 52. See also Swiderski v. Swiderski, 18 So.3d 280, 284 (¶ 12) (Miss.Ct. App.2009).

. See Miss.Code Ann. § 93-11-65.

. See Miss.Code Ann. § 11-43-7.

. Mississippi Code Annotated section 11-43-11 provides, if from the showing made by the petition for habeas cotpus, it manifestly appears the person presenting it is not entitled to any relief thereby, the chancellor may refuse to grant the writ. See Miss.Code Ann. §§ 93-5-24; 11-43-7; 93-11-65. In this case, the chancellor not only reviewed the petition, but he held a hearing in this habeas corpus proceeding. The evidence in the record supports the judgments of the chancellor.

. The supreme court further discussed the test for abandonment, by stating that abandonment occurs ‘‘where a parent, without just cause or excuse, forsakes or deserts his or her infant child, for such a length of time, and under such circumstances, as to show an intent to shirk or evade the duty, trouble or *798 expense of rearing [the child], or a callous indifference to [the child’s] wants, or a reckless disregard of [the child's] welfare, he or she is guilty of such an abandonment of [the child] as to bar his or her right to thereafter reclaim [the child's] custody from any person who may have ministered to and protected [the child] during such period of desertion.” Id. at 46, 58 So.2d at 83 (citations omitted).

. See J.P. v. S.V.B., 987 So.2d 975, 979-80 (¶¶ 8-12) (Miss.2008) (affirming the trial court's award of the daughter to the grandparents due to the father's history of family violence).

. John is also Blake’s paternal grandfather.

. The testimony reflects Richard failed to care and support Blake financially or otherwise.

.According to the record, Richard B. Size-more made this statement. However, from the surrounding testimony, it is clear from our review that the statement was made by John B. Sizemore about his son, Richard Sizemore.

. Roberta testified she is Richard’s stepmother.

. "Under Mississippi law, the 'decision to grant or deny a continuance is within the sound discretion of the trial court and will not *800 be reversed absent an abuse of discretion that resulted in a manifest injustice.’ ” Robinson, 58 So.3d at 42 (¶ 10) (quoting Pool v. Pool, 989 So.2d 920, 924 (¶ 12) (Miss.Ct.App. 2008)).

. See Robinson, 58 So.3d at 42 (¶ 10) (stating the decision to grant a continuance lies within the sound discretion of the chancellor); Pool, 989 So.2d at 925 (¶ 13) (finding the court will not reverse the denial of a continuance absent a showing of prejudice); Luse v. Luse, 992 So.2d 659, 663 (¶ 12) (Miss.Ct.App.2008) ("A party is not allowed to raise an issue for the first time on appeal.”).