KITCHENS, Justice,
for the Court:
¶ 1. The Jefferson Davis County Youth Court held J.P.,[1] a minor, in a juvenile detention facility for 103 days, then in the Jefferson Davis County Jail for thirty days more when J.P. attained age eighteen. J.P. was never adjudicated delinquent. No hearing was held on the question of his delinquency. After more than four months in custody, he was released. The court nevertheless ordered his parents to pay the nearly $10,000 cost of J.P.’s 103-day confinement in juvenile detention. We reverse the judgment of the youth court and render judgment in favor of the parents. The State cannot charge the parents of a minor for his detention when that detention was never legally justified.
FACTS AND PROCEDURAL HISTORY
¶ 2. J.P.’s father, D.O., and his mother, R.P., are separate parties in this litigation. While both are contesting J.P.’s 103-day detention and its associated costs, D.O. also is contesting a different five-day detention imposed upon J.P. in 2011, for which D.O. was ordered to pay the costs.
¶ 3. At some point in 2011, J.P. was arrested for the possession of marihuana and was required to wear an ankle monitor as a condition of his release on the marihuana charge. J.P. was brought back to youth court because it was alleged that he repeatedly had allowed the monitor to power down on weekends, making it impossible for his location to be tracked. The hearing for this alleged violation occurred on August 10, 2011. J.P. and his father, D.O., were issued summonses to appear at the hearing. Handwritten notes on the summonses show that both father and child were served on August 8, 2011, two days before the hearing. J.P., the juvenile, was assigned court-appointed counsel for the hearing. At the hearing, the youth court referee stated that, although no petition for contempt had been filed against J.P., the court was within its power sua sponte to find him in contempt and to sentence him to a juvenile detention facility for five days. J.P. was not proven delinquent beyond a reasonable doubt. *207 J.P.’s father, D.O., was ordered to pay the costs associated with J.P.’s detention. The total was $550 for the detention and $100 for the child’s transportation to and from the facility. D.O. alone is contesting these costs.
¶ 4. On June 21, 2012, J.P. was arrested in Jefferson Davis County for possession of marihuana and a handgun. He was placed in the temporary custody of the Pike County Juvenile Detention Center until a detention hearing could be held on June 25, 2012. After the detention hearing, of which there is no transcript, the court ordered that J.P. would remain in the detention center until an adjudicatory hearing could be conducted. No date or time for the adjudication hearing was set, but the boilerplate language of the fill-in-the-blank order states that a prosecutorial petition was to be filed against J.P. within five days of the date of the order. J.P.’s parents were ordered on that same day to pay $55.00 per day each while J.P. was in juvenile detention. The State failed to file a petition within five days of the hearing.
¶ 5. On August 13, 2012, forty-eight days after the detention hearing and forty-three days after the petition was due, the youth court ordered that a formal petition be filed against J.P. The same day, a petition was filed against the juvenile, accusing him of “CONTEMPT OF COURT in violation of § 48-21-153 of the Mississippi Code of 1972, Annotated against the peace and dignity of Mississippi.” The charging document offered no facts in support of the petition. Summonses were issued to J.P. and his parents on August 13, 2012, for a hearing that was to take place on August 15, 2012. However, on that day, the court, on its own motion, ordered a continuance of the matter until October 2, 2012, J.P.’s eighteenth birthday. No reason was given for the continuance ordered on August 15, 2012, except the conclusory statements that good cause was shown and the motion for continuance was well taken. No record was made of this hearing. The court also ordered J.P.’s mother and father to pay $600 each per month to cover the costs of holding J.P. in the detention center in Pike County.
¶ 6. On October 2, 2012, the adjudication hearing was postponed again. As before, no record was made of the proceedings. The court transferred J.P. to the Jefferson Davis County Jail because he had reached the age of eighteen. By that time, he had spent 103 days in the juvenile detention facility.[2] The order stated that 'the court was permitting a continuance to allow JJP.’s parents to obtain counsel. On October 15, 2012, counsel for J.P. entered their appearances and requested permission to access J.P.’s youth court records. Three days after entering their appearances, counsel for J.P. filed a Motion for Immediate Release, arguing that J.P.’s detention was unlawful because it violated the constitutional guarantees of due process and it violated several provisions of the Mississippi Youth Court Law. A hearing was held on the motion on October 31, 2012, after which the court released J.P. from custody and terminated its jurisdiction over him. At the same hearing, J.P.’s mother, R.P., went before the court to explain that she was unable to pay the $600 per month that the court had ordered her to pay for J.P.’s detention fees. The court ordered her to pay $100 per month until her debt was paid. The clerk’s office sent an accounting of costs to the mother *208 which showed that she owed half of $11,420 to cover J.P.’s detention and transportation costs.
¶ 7. On January 16, 2013, R.P. filed a Motion to Vacate Orders to Pay the Costs of Transporting and Detaining [J.P.] She argued that the orders were invalid because J.P.’s detention was unlawful, it violated the Youth Court Law, no adequate formal petition was ever brought against him, he was detained for longer than the youth court was permitted to detain him, and his constitutional rights to due process were violated. After a hearing on the motion, the court reduced the per diem cost of detaining J.P. from $110 to $90, reducing the total amount owed for his detention and transportation from $11,420 to $9,380. The parents each owed half, $4,690, according to the youth court. The court’s final order upholding the majority of the costs levied against J.P.’s parents consisted of a single page which attached the entire 113-page transcript of the hearing of January 16, 2013, as “the Final Order of this Court.”
¶ 8. The parents have filed separate appeals from the order of the court below. Their appeals have been consolidated. Both are appealing from the order assessing $9,380 against them for the detention of J.P., which occurred despite his never having been adjudicated delinquent. D.O. alone is appealing the earlier decision of the same court which charged him $650 for the cost of holding his son, J.P., in a juvenile detention facility for five days.
STANDARD OF REVIEW .
¶ 9. “The appellate standard of review for youth court proceedings is the same as that which we apply to appeals from chancery court_” A.B. v. Lauderdale County Dep’t of Human Servs., 13 So.3d 1263, 1266-67 (¶14) (Miss.2009). J.P.’s parents are arguing that the youth court did not have the power to levy J.P.’s detention and transportation fees against them as a matter of law. This Court reviews matters of law de novo. See Matter of Estate of Mason, 616 So.2d 322, 327 (Miss.1993).
ANALYSIS
I. The 2011 Detainment
¶ 10. J.P. was committed to the Pike County Juvenile Detention Center in August 2011 for five days for violating the conditions of his release on a marihuana charge. His father D.O. attended the hearing and was ordered to pay the costs of J.P.’s detention and his transportation to and from the facility, which amounted to $650. D.O. argues that the youth court did not have jurisdiction to commit J.P. to the detention center and therefore did not have the authority to order D.O. to pay for the cost of that detention. He also argues that he was denied sufficient service of process, and his due process rights were denied as a result.

1. Lack of Jurisdiction

¶ 11. The State did not file a petition against J.P. in the 2011 proceeding. Although no petition was filed, the court went on the record to say that it had the power to sentence J.P. sua sponte for direct contempt for failure to abide by the terms of his release. D.O. argues that the court’s failure to hold a proper delinquency proceeding, with a petition filed against J.P., meant that the court was without jurisdiction to send him to a detention facility, and therefore without jurisdiction to charge D.O. for J.P.’s detention. We agree that the chancellor was without authority to detain J.P. under the Youth Court Law, but for a different reason.
¶ 12. D.O. argues that, because no petition was filed against J.P., his delinquency proceeding was a nullity. However, based *209 upon the representations in the parties’ briefs and the transcript of the hearing, it is clear that the proceeding against J.P. was in the nature of a contempt action. Apparently, J.P. already had been adjudicated delinquent on a marihuana charge, but he was permitted to live with his father on the condition that he wear an ankle monitor. The violation of this “condition,” the requirement of which is not in the record before us, is not the same as a delinquent act which the State must prove beyond a reasonable doubt. The Youth Court Law outlines a youth court’s authority to modify its orders in a delinquency proceeding.
If the youth court finds, after a hearing which complies with the sections governing adjudicatory hearings, that the terms of a delinquency or child in need of supervision disposition order, probation or parole have been violated, the youth court may, in its discretion, revoke the original disposition and make any disposition which it could have originally ordered. The hearing shall be initiated by the filing of a petition that complies with the sections governing petitions in this chapter and that includes a statement of the youth court’s original disposition order, probation or parole, the alleged violation of that order, probation or parole, and the facts which show the violation of that order, probation or parole. Summons shall be served in the same manner as summons for an adjudicatory hearing.
Miss.Code Ann. § 43-21-613(1) (Rev. 2009) (emphasis added).
¶ 13. So the youth court was within its authority to “make any disposition which it could have originally ordered,” but only if a petition had been filed that included the original disposition order, the alleged violation of that order, and the facts showing the violation of that order. Here, no petition was filed, and no copy of the original disposition order is in the record. Accordingly, the youth court was without jurisdiction to modify its previous order, as it did not conduct a hearing in compliance with the laws governing adjudicatory hearings or the laws governing modification of youth court orders.
1114. This Court has spoken forcefully about the importance of the youth court’s abiding by the rules of procedure in delinquency cases.
It naturally follows that a child may not be committed to an institution without a petition and an adjudicatory hearing. Neither can the custody of a child be changed from its parents, guardian or custodian except by consent of the parents, guardian or custodian, or by order of the court after an adjudicatory hearing based on a petition. The Youth Court Law authorizes a temporary change of custody in urgent and necéssi-tous circumstances, but the courts should exercise care to limit temporary changes of custody to urgent and necessitous cases, and see that a petition is filed and a hearing held within the time limits prescribed by statute.
In Interest of Dennis, 291 So.2d 731, 734 (Miss.1974) (emphasis added).
¶ 15. In this case, after hearing the testimony of J.P.’s “house arrest guy” saying that J.P. had been letting his monitor power down, the court simply said it had no choice but to “send” J.P. to the detention center for five days and that the filing of a petition was unnecessary since J.P. was in “direct contempt.” However, Section 43-21-613 makes it abundantly clear that the youth court may modify its delinquency orders in the face of contempt only where a petition has been filed and adequate procedural due process safeguards have been observed. That did not happen here. The youth court failed to follow the *210 procedures put in place to determine delinquency; it failed to articulate the proper burden of proof necessary for its judgment; and, under the precedent of this Court and the Youth Court Law it was without authority and jurisdiction to sentence J.P. to a detention facility when no petition had been filed against him and when he was not actually adjudicated delinquent.

2. Insufficient notice and process

¶ 16. D.O. further argues that he was given insufficient notice of the proceedings in 2011, that he was given insufficient notice about the penalties he might be facing as a result of those proceedings, and that he was not informed that he had the right to counsel or appeal. These failures, he argues, deprived him of the right to due process of law under the constitutions of the United States and the State of Mississippi.
¶ 17. “The youth court is without jurisdiction unless the parents or guardian if available, be summoned as required by statute.” Hopkins v. Youth Court of Issaquena County, 227 So.2d 282, 284 (Miss.1969) (emphasis added). Rule 22 of the Uniform Rules of Youth Court Practice requires that “[sjummons shall be served not less than three (3) days before the date set for the adjudicatory hearing of proceedings concerning the child....” URYC 22. Further, before any adjudicatory hearing, the youth court must “ascertain whether the notice requirements have been complied with...Miss.Code Ann. § 43-21-557 (Rev. 2009). It is undisputed that D.O., the father, was served with his summons for the hearing only two days before the hearing occurred. His service did not comply with the rules of service established by the Youth Court Law. Nevertheless, he appeared at the hearing. “A party other than the child may waive service of summons on himself ... by voluntary appearance at the hearing....” Miss.Code Ann. § 43-21-507 (Rev. 2009). Any infirmity in the service was cured by the father’s appearance at the hearing.
¶ 18. However, before the 2011 hearing, D.O. was not told about the amounts he might be assessed for transportation and detention. In fact, the order of the court instructing the father to pay the costs of the detention does not inform him what the amount will be. Further, there is nothing in the transcript of the 2011 hearing indicating that the court made D.O. aware that he had the right to an attorney or the right to an appeal. As a party to the proceedings under Uniform Rule of Youth Court Practice 4, he argues that the trial court’s failure to ascertain whether his due process rights had been satisfied rendered the entire hearing invalid.
¶ 19. Although done in a different context, this Court, in analyzing the ability of a youth court to order the parents of a juvenile who had been adjudicated delinquent to pay restitution costs, has made it clear that due process of law must be safeguarded by sufficient procedural rules. See In Interest of B.D., 720 So.2d 476, 479 (¶ 10) (Miss.1998). A hearing must be held when adjudicating restitution costs to a parent, and that hearing would require, at a minimum, “(1) notice to the defendant that victim restitution was being considered by the court, (2) the nature of such restitution considered, (3) an opportunity to the defendant to be heard and to object, and (4) a finding by the court to afford adequate appellate review.” Id. (quoting Butler v. State, 544 So.2d 816, 821-22 (Miss.1989)). In the 2011 hearing, the father was not notified that he could be charged for J.P.’s detention, nor was he told the cost, nor was he given the opportunity to object to the charge. In 2011, Section 43-21-615 clearly stated that transportation and detention costs could be *211 assessed against the parent of a juvenile only “after giving the responsible parent or guardian a reasonable opportunity to be heard....” Miss. Code Ann. § 43-21-615 (Rev. 2009). The procedure used by the court to charge D.O. for J.P.’s 2011 confinement fell drastically short of the basic procedures which guarantee that a parent’s due process rights are observed.
¶ 20. The assessment of costs against D.O. for his son’s 2011 detention must be reversed for two reasons. The youth court was without jurisdiction to commit J.P. because it failed to comply with the procedural mandates of Section 43-21-613. The State did not file a petition outlining the charges of contempt, and the previous order that J.P. was alleged to have violated was not attached, nor is it in the record. The youth court could not modify its prior order until it followed the procedure outlined in the Youth Court Law. As it had no jurisdiction to detain J.P., it certainly was without jurisdiction to charge his father for the cost of that unlawful detainment." Additionally, the youth court’s failure to notify D.O. that he was at risk of bearing the cost of J.P.’s detention, or even how much that cost might be, fell short of the procedural safeguards put in place to protect the parents of delinquent- or, in this case, allegedly delinquent-children.
II. The 2012 detainment in cause number 12-D-0488
¶ 21. With respect to J.P.’s 2012 detainment, the appellants, J.P.’s parents, raise five issues.
1.Whether Mississippi’s Youth Court Law authorizes a youth court to order parents to pay the costs of detaining a child alleged to be delinquent without first adjudicating the child delinquent.
2. Whether a youth court may order parents to pay the costs of detaining a child when the child is detained in violation of federal and state law.
3. The youth court does not have jurisdiction to sanction a parent when a minor is never committed.
4. J.P.’s parents were deprived of their right to due process by the deficient hearing process.
5. The youth court’s final order does not provide meaningful guidance to JJP.’s parents and strains appellate review.
This Court will address some of the issues together for the sake of clarity and brevity-

1. Whether Section 43-21-615 as it existed in 2012 permitted the youth court to assess costs to the parents of a minor who never was adjudicated delinquent.

¶ 22. It is undisputed that, despite his spending 103 days in juvenile detention and thirty days in the Jefferson Davis County Jail,[3] J.P. was never adjudicated delinquent. The State argues that the wording of the relevant statute at the time permitted this practice. When J.P. was arrested and his parents were ordered to pay the costs of his detention, Mississippi Code Section 43-21-615(2) provided:
Whenever a child is committed by the youth court to the custody of any person or agency other than the custody of a state training school, the youth court, after giving the responsible parent or guardian a reasonable opportunity to be *212 heard, may order that the parent or guardian pay, upon such terms or conditions as the youth court may direct, such sum or sums as will cover, in whole or in part, the support of the child including any necessary medical treatment. If the parent or guardian shall wilfully fail or refuse to pay such sum, he may be proceeded against for contempt of court as provided in this chapter.
Miss.Code Ann. § 43-21-615(2) (Rev. 2009). That statute was amended in 2013, changing the first sentence to say that “[w]henever a child is adjudicated delinquent and committed by the youth court to the custody of any person or agency ..., the youth court ... may order that the parent or guardian pay” the costs associated with housing that child. Miss.Code Ann. § 43-21-615(2) (Supp.2014) (emphasis added).
¶ 23. The State uses the amended language to argue that, prior to the amendment, the law permitted youth courts to hold juveniles in custody and charge their parents for the detention without an adjudication of delinquency. Obviously, if the statute had contained the amended language when the court ordered J.P.’s parents to pay his detention costs, the order would have been illegal because, indisputably, he never was adjudicated delinquent. The State simply has argued that the law in 2012 permitted youth courts to charge parents for their juveniles’ detentions at any stage of the proceedings against that child, and without any requirement that the child be proven guilty of anything. The State makes no substantive argument for why such a rule would be a good idea or would be fair. The State’s statutory interpretation argument is unpersuasive.
¶24. Even in 2012, the word “committed” as used in Section 43-21-615 had a very specific meaning. Children could be “committed” to custody only after they had been adjudicated delinquent. The context in which the term is used in the Youth Court Law indicates that “commitment” occurs only as part of a disposition order which follows an adjudication hearing. See Sorenson v. Secretary of Treasury of U.S., 475 U.S. 851, 860, 106 S.Ct. 1600, 1606, 89 L.Ed.2d 855 (1986) (quotation omitted) (“The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning.”). Section 43-21-605 states that one of the authorized dispositions of a youth court is to “commit” the child to a juvenile detention facility. A disposition by a court must come only after a hearing has been held and the State’s burden of proof has been met.
¶ 25. Further, the provisions of the law addressing pre-adjudication orders such as arrest warrants and custody orders,[4] temporary custody orders,[5] and detention hearings[6] do not mention “commitment” at all. Several other sections dealing with commitment make clear that it can only occur after a hearing on the matter. See Miss.Code Ann. § 43-21-315(4) (Rev. 2009) (stating that a civil commitment hearing under Section 43-21-73 is required before a youth court may commit a child to the Department of Mental Health); see also Miss.Code Ann. § 43-21-319 (Rev. 2009) (stating that juveniles could be housed in the “committing jurisdiction” where they were “found to be delinquent”). Additionally, Section 43-21-615, which out *213 lines cost assessments against parents for their children’s detention, is located in the “Disposition” section of the Youth Court Law. The placement of that section indicates that, even before the amendment of Section 43-21-615 to include the language “adjudicated delinquent,” the word “commitment” was used in a specific way to indicate that commitment could occur only after a delinquency adjudication.
¶ 26. This understanding of commitment in the youth court context dovetails with the legislative history of the amendment to Section 43-21-615. The history makes clear that another part of the law was the real object of the amendment. As a part of the amendment, the subsection now requires that the parents “be provided an itemized bill of all costs and shall be given an opportunity to request an adjustment of the costs.” Miss.Code Ann. § 43-21-615(2) (Supp.2014). It is that section that J.P.’s parents argue was the real substantive amendment to the statute. They contend that, when the amendment was being discussed by the Legislature, all the relevant discussion focused on the requirement to provide an itemized bill to the parents of juvenile delinquents. Further, the title of H.B. 1516, which amended the statute, was “An Act to Amend Section 43-21-615, Mississippi Code of 1972, To Require Before A Parent Pays Certain Costs For The Support Of Certain Youth Who Have Been Adjudicated Delinquent, The Parent Of The Child Shall Receive An Itemized Bill Pertaining To The Costs; To Require The Youth Court To Provide An Opportunity For The Parent To Request An Adjustment Of Such Costs; And For Related Purposes.” Clearly, the main concern of the Legislature was ensuring that parents could contest costs associated with juvenile delinquent detainments and receive itemized bills in order to do so.
¶ 27. Finally, it simply defies logic that a court could be able to commit a child to a detention facility without having found him or her guilty[7] of anything, and be able to make the child’s parents pay for it. As we stated earlier, without an adjudicatory hearing on the child’s delinquency, the youth court is without jurisdiction or authority to assess costs against the parents. This Court has long recognized “the dominant and natural right of the parent to the custody and care of the child.” In Interest of M.R.L., 488 So.2d 788, 789 (Miss.1986) (quoting Reynolds v. Davidow, 200 Miss. 480, 484, 27 So.2d 691, 691-92 (1946)). Accordingly, to prove a child delinquent and remove him from the custody of his parents, it must be proven beyond a reasonable doubt that the child is delinquent and in need of supervision. “Because an adjudication that a child is in need of supervision confers upon the Youth Court the authority to remove him or her from the home of his parents, our law provides the most stringent burden of proof.” M.R.L., 488 So.2d at 790. A child may be adjudicated delinquent only if the youth court finds that he or she is delinquent “on proof beyond a reasonable doubt....” Miss.Code. Ann. §43-21-561(1) (Rev. 2009). “[A] child may not be committed to an institution without a petition and an adjudicatory hearing” in which the child is proven delinquent beyond a reasonable doubt. Dennis, 291 So.2d at 734 (emphasis added).
¶ 28. J.P. was never adjudicated delinquent in 2012. The youth court had no authority or jurisdiction to send him to a juvenile detention facility indefinitely with no petition against him forthcoming and no adjudication hearing set. J.P.’s detention was invalid as a matter of law. While a youth court does have authority to detain a *214 juvenile pending an adjudication hearing, that authority is very limited. The State is required by law to bring a petition alleging delinquency within five days of a juvenile’s detainment precisely because the youth court has limited power to hold a minor who has not been adjudicated delinquent. The youth court is designed to get the ball rolling and adjudicate delinquency or not quickly, to minimize the amount of time that a juvenile’s status is undecided.
¶ 29. Here, J.P. sat in limbo for 133 days. The youth court never held an adjudication hearing. J.P.’s parents cannot be required to bear the costs of J.P.’s invalid detention because he was never proven delinquent beyond a reasonable doubt. It is only after such a ruling that a child may be committed to a detention facility. The law as it stood in 2012 clearly contemplated that a child must have been adjudicated delinquent before his parents could be required to pay for his transportation and/or confinement. Mississippi’s Constitution guarantees this simple courtesy to acquitted adult criminal defendants. “Defendants, in cases of conviction, may be taxed with the costs.” Miss. Const, art. 14, § 261 (emphasis added). So. it is for unad-judicated juveniles. To hold otherwise would be fundamentally unfair to the parents of children who were never determined to have been delinquent but nevertheless were removed from their parents’ care. The State’s contention that such a practice was not prohibited by law falls flat. Without an adjudication of delinquency, the youth court’s assessment of costs against J.P.’s parents violated their rights to due process of law.

2. J.P.’s detention violated several sections of Mississippi’s Youth Court Law.

¶ 30. The State’s interpretation of the 2012 version of Section 43-21-605 is incorrect. For a youth court to “commit” a child to a detention facility, that child first must be adjudicated delinquent first. That alone is sufficient to reverse the youth court’s assessment of costs against D.O. and R.P. However, the proceedings below so violated Mississippi’s Youth Court Law, and, consequently, D.O. and R.P.’s right to due process, that we are compelled to elaborate on those violations, and how those violations in and of themselves would be sufficient grounds to reverse the assessment of costs.
¶ 31. J.P. spent 103 days in the Pike County Juvenile Detention Facility. Section 43-21-605 forbids the confinement of delinquents in a detention facility for more than ninety days.
¶ 32. Section 43-21^451 requires that a petition alleging delinquent conduct be filed within five days of a detention hearing. The petition against J.P. was filed forty-eight days after his detention hearing.
¶ 33. Section 43-21-551 requires an adjudicatory hearing “not later than twenty-one (21) days after the child is first detained by the youth court....” Miss.Code Ann. § 43-21-551 (Rev. 2009). The hearing may be postponed, but only upon motion of the child, or if process cannot be completed, or if a material witness is unavailable. Id. Here, the court never held an adjudicatory hearing, despite J.P.’s being detained for a total of 133 days. When the court postponed J.P.’s adjudicatory hearing on August 15, it did so on its own motion and merely stated that the hearing was postponed “for good cause shown.” After twenty-one days from the date of J.P.’s detainment, the youth court was without authority to hold him in detention.
¶ 34. Additionally, petitions alleging delinquent behavior must “set forth plainly and concisely and with particularity ... a statement of the facts, including the facts which bring the child within the jurisdic *215 tion of the youth court and which show the child is a delinquent child....” Miss. Code Ann. § 43-21-455(1)(c) (Rev. 2009). The law also requires that, in the case of a child alleged to be delinquent, that the petition “recite factual allegations with the same particularity required in a criminal indictment....” Miss.Code Ann. § 43-21-455(4) (Rev. 2009) (emphasis added). J.P.’s petition stated in its entirety: “That on or about 06/21/2012, in JEFFERSON DAVIS COUNTY, MISSISSIPPI, [J.P.] did purposefully, knowingly, and unlawfully commit the act of CONTEMPT OF COURT in violation of § 43-21-153 of the Mississippi Code of 1972, Annotated against the peace and dignity of the State of Mississippi.” Not a single fact was alleged to support the charge. Clearly, were this a criminal indictment it would fall woefully short of the particularity required for such a formal and serious document. The complete failure to provide adequate notice of the charges against J.P. violated the Due Process Clauses of the United States and Mississippi Constitutions. “A minor is entitled to constitutional guarantees including notice of charges, right of counsel, right of confrontation and cross-examination, and the privilege against self-incrimination.” In Interest of Gressett, 272 So.2d 921, 922 (Miss.1973) (citing In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)).
¶ 35. Making matters worse, no transcript was made for several of the proceedings in 2012. On June 25, 2012, the youth court held a detention hearing and ordered J.P.’s parents to pay the costs of his detention. As noted in the father’s brief, nothing in the record indicates whether either parent was present at that hearing; there is no transcript of that hearing, and there is nothing indicating that D.O. or R.P. was informed prior to the hearing that they could be held liable for some of the costs of their son’s detention. No transcript was made of the August 13, 2012, hearing. There is no record indicating whether the youth court ascertained whether J.P.’s parents could afford to pay the fines assessed against them.
¶ 36. Similar to the 2011 proceedings against J.P., here the youth court’s procedure for assessing costs against J.P.’s parents falls short of protecting their basic due process rights. Once again, R.P. and D.O. were ordered to pay for J.P.’s detention by order of the court. There is no indication that they were notified that such a sanction was being considered by the court; there is no record indicating that the court determined whether they could pay such a sanction; and they were able to contest the sanction only when they obtained pro bono legal counsel after J.P. had spent more than ninety days in juvenile detention. As this Court noted in B.D., a hearing must be held when assessing costs on the parents of a juvenile delinquent and that hearing must follow, at a minimum, certain procedures to safeguard the due process rights of the parents. B.D., 720 So.2d at 479 (¶ 10). The Court in that case also noted: “The Youth Court Act provides a fairly detailed procedure for determining whether the juvenile in question is delinquent, and what disposition should be made of the matter, but says little procedurally about how restitution is to be determined.” Id. (¶ 11). Clearly, the Court recognized that only after adjudication had taken place could the youth court reach a disposition, particularly one regarding reimbursement for the detention of the juvenile by his or her parents.
¶ 37. The State argues that J.P.’s parents were properly on notice of the hearings regarding J.P.’s detention, that they were present at the relevant proceedings against J.P., that one continuance was given to them in order for them to obtain *216 counsel, which they did, and that therefore their due process rights were satisfied. The State does not address the complete failure to bring a petition against J.P. until forty-eight days after his detention; it does not address its own failure to file an adequate petition against J.P.; it does not address J.P.’s detention of more than ninety days in violation of the law; and, most importantly, it does not address the failure to hold an adjudicatory hearing on J.P.’s delinquency during the 133 days he spent confined. That State merely argues that J.P.’s parents should have known that they could be charged for his detention because they had been through this before.
¶ 38. The youth court’s lack of compliance with the procedural requirements of the Youth Court Law violated J.P.’s and his parents’ state and federal rights to due process of law. Without an adjudicatory hearing, J.P.’s detention was unjustified. The juvenile was held for longer than was statutorily permitted, he was charged far later than is statutorily permitted, and costs were assessed against his parents in violation of their rights to due process of law.
CONCLUSION
¶ 39. We reverse the judgment of the Youth Court of Jefferson Davis County and render judgment in favor of the juvenile’s parents, D.O. and R.P. Mississippi’s Constitution forbids the assessment of costs against adults who are charged with crimes but who are not convicted. The same rule applies to juveniles. The State cannot charge detention costs to the parents of a juvenile who has not been adjudicated delinquent. J.P.’s detention occurred in violation of several sections of the Youth Court Law, violating both his and his parents’ rights to due process of law under the federal and state constitutions. The youth court was without jurisdiction to sentence J.P. to a juvenile detention facility where no petition was filed against him and where the State did not prove beyond a reasonable doubt that he was, in fact, delinquent. Accordingly, the youth court was without jurisdiction or authority to assess the costs of that detention against J.P.’s parents. The relevant statute regarding costs for detention in 2012 clearly contemplated that a juvenile had to be adjudicated delinquent before those costs could be assessed against his parents. The 2013 amendment only reinforced and clarified that requirement. In almost every way, the proceedings (or lack thereof) against J.P. were constitutionally and procedurally infirm, and the assessment of costs against his parents runs contrary to the procedures and policies of the Youth Court Law itself. Therefore, the judgment of the Youth Court of Jefferson Davis County is reversed, and judgment is here rendered for R.P. and D.O.
¶ 40. REVERSED AND RENDERED.
WALLER, C.J., DICKINSON, P.J., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ„ CONCUR. RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.

. We shall refer to the minor and the minor’s parents by their initials.

. Youth courts are not permitted to sentence a juvenile to a detention facility for more than ninety days. See Miss.Code Ann. § 43-21-605(1)(Z) (Rev. 2009). Once transferred, J.P. would spend thirty days more in the Jefferson Davis County Jail until he was released on October 31, 2012.

. The court did not require the parents to pay the cost of J.P.’s thirty-day stay in the county jail.

. See Miss.Code Ann. § 43-21-301 (Rev. 2009).

. See Miss.Code Ann. § 43-21-307 (Rev. 2009).

.See Miss.Code Ann. § 43-21-309 (Rev. 2009).

. Delinquent, in youth court parlance.